## THE PEOPLE v. ALEXANDER T. HURST.

*Private counsel in criminal prosecutions—Evidence of bank entries —Recorder's Court of Detroit—Transfer of criminal cases to courts of concurrent jurisdiction.*

Counsel who represent private interests cannot be supposed to be impartial, and therefore cannot be retained to assist in criminal prosecutions growing out of such interests.

An assistant prosecuting attorney has no power in the matter of retaining counsel to assist in criminal prosecutions.

A court cannot act upon unsworn allegations of the impartiality of counsel retained to assist in a criminal prosecution, if any question is made as to the fact and the defense objects.

The pass books and signature book of a savings bank are admissible, with the testimony of bank officers, as original documents and *res gestæ* in showing the existence of deposits.

Secondary evidence may be given of entries on the blotter of a bank, where there is no question of genuineness or special necessity for producing the original.

Materiality of testimony is a question of law.

The charter of Detroit (Act 55 of 1857) in establishing the Recorder's Court with exclusive jurisdiction to try crimes committed within the city, and to try such crimes on indictments found in the circuit court for Wayne county, is not unconstitutional.

The act establishing the Recorder's Court of Detroit, having been in existence over twenty years, during which time the validity of the court's judgments had not been disputed, was *held* entitled to such presumptions as long practical construction and acquiescence always create.

The original jurisdiction of the circuit courts of Michigan is subject to legislative exceptions: they have jurisdiction when not prohibited. Const., Art. VI., § 8.

The constitution does not forbid giving to a municipal court original jurisdiction of crimes committed within the municipality.

Municipal courts established by the Legislature under Sec. 1 of Art. VI. of the constitution, need not have both civil and criminal jurisdiction, and may have jurisdiction of the kinds of cases originally triable in the circuit courts, so long as no constitutional authority of the circuit courts is interfered with.

In Michigan both civil and criminal cases can be transferred from courts of original to courts of concurrent jurisdiction unless so far advanced as to involve conflict. Change of venue is practically a transfer.

At common law criminal indictments were often removed before trial from various jurisdictions into the Queen's Bench, and transferred from one commission to another; in the United States courts they are transferred for trial between the circuit and district courts.

A jury for a municipal court may properly be chosen from the municipality instead of the body of the county.

History of the Mayor's and Recorder's Courts of Detroit reviewed.

Exceptions before judgment from the Recorder's Court of Detroit. Submitted June 20. Decided July 1.

CRIMINAL INDICTMENT FOR PERJURY. Verdict of guilty in the court below.

Attorney General *Otto Kirchner* for the people. Transfer to a municipal court of a cause pending in the circuit court can be authorized, *People v. Wayne Circ. Judge*, 27 Mich., 5.

*Maybury & Conely* for respondent. If a prosecuting attorney cannot perform his duties, his place may be provisionally filled, Comp. L., § 536; and if he needs assistance he can obtain it, Comp. L., §§ 255, 257; the establishment of the Recorder's Court by an act entitled "An act to revise the charter of the city of Detroit" is a violation of the constitutional provision that no law shall embrace more than one object, which shall be expressed in its title, Const. Art. IV., § 20; and so far as concerns the object not expressed, the act is invalid, *People v. Mahaney*, 13 Mich., 494; *Ryerson v. Utley*, 16 Mich., 269; *Booth v. Eddy*, 38 Mich., 245; Cooley's Const. Lim., 141-151, the circuit court of Wayne county has constitutional jurisdiction over crimes committed within the county, and the statutory provision transferring indictments for crimes committed within the city to the Recorder's Court for trial (Act 55 of 1857, ch. 6, §§ 5, 13) is invalid; the constitutional jurisdiction of the circuit court cannot be abridged, *Heath v. Kent Circ. Judge*, 37 Mich., 372; *Allen v. Kent Circ. Judge*, id., 474.

41 MICH.—42.

CAMPBELL, C. J. Respondent was indicted for perjury in the circuit court for the County of Wayne, and the indictment was certified to the recorder's court for trial, where he was convicted. The perjury charged was in giving testimony in a chancery suit against his father, himself and others, concerning the consideration and circumstances of certain conveyances alleged to be fraudulent.

The solicitor for the complainant against whom Hurst had testified in the matter out of which this prosecution grew was against objection allowed to assist in the prosecution of the criminal suit. This case comes so plainly within the rule as laid down in *Meister v. People*, 31 Mich., 99, and *Sneed v. People*, 38 Mich., 248, as to need no extended discussion. The mischief aimed at by the excluding rule is the prosecution of criminals by counsel who represent private interests, and who cannot be supposed to be impartial. The peculiar methods whereby the end is brought about of getting him into the case are not important. That he was approached by the complainant's agents in the first instance and declined to be retained except for the county, and was then retained by the county, cannot change the position of affairs, or render him any less biased.

It was evidently his position in the civil case which secured his employment; and the fact that the assistant prosecuting attorney—who has no power in the matter at all—was not approached by the parties and received no suggestions from them, is of no consequence, and could not do away with the objection. If any question of fact was made, the court could not properly act upon any such unsworn suggestion without the consent of the defense.

The question of fact involved on the trial for perjury was chiefly the existence of certain deposits in the Detroit Savings Bank. Objection was made to proof

derived from pass-books and other books of the bank, although aided by the testimony of bank officers. The testimony showed that pass-books issued by numbers, having no name indorsed, and that a book was kept in which the depositor's signature was written opposite his number, showing to whom the money was to be paid. There was evidence of the correctness of the pass-books and of their conformity with other books. The record does not show very clearly what objections were made in this regard, but no error that is suggested seems to us of any force. The pass-books and the signature-books are original documents forming part of the *res gestæ*, and we can conceive of no possible reason why they are not as good evidence until impeached for error as any other mutual transaction evidenced by writing. There is in the brief a suggestion not fully borne out by the record, that secondary evidence was given of some of the bank entries. If so, we see nothing wrong in it. Banks are subject to the performance of duties to the public which might be seriously interfered with if they were compelled to carry the books needed in their daily business into every court or tribunal where testimony is to be introduced concerning them. Books belonging in public offices cannot be removed from their legal custody without some strong necessity for their production. While bank books are not public to the same extent, yet the business which the corporations are required to transact cannot be done unless the books are usually preserved where they belong. The blotter, which is the book specially referred to, being the book of original entries, must be in constant demand, and we see no reason why its contents may not be shown without production of the original, in ordinary cases, where no question of genuineness is likely to arise requiring a personal inspection.

The court was right in passing upon the materiality of the testimony. That must always be a question of law. This is too elementary to be worthy of consideration.

The chief objection made was to the jurisdiction of the recorder's court to try the indictment. The grounds of objection are chiefly constitutional, and are *first*, that the court was organized under a law whose title did not indicate the subject passed upon; and *second*, that powers have been granted which could not lawfully be given to the court.

These are very serious questions, and deserve careful attention. That the charter containing the provisions complained of is open to much criticism is beyond doubt. It is a confused and blind collection of enactments and amendments which we have had reason to regard as a very peculiar system. But it has been in force over twenty years, so far as the provisions now to be considered are concerned, and during that period multitudes of criminals have been punished under it, and many judgments have been rendered and enforced, without any dispute concerning their validity. It is entitled to such presumptions as long practical construction and acquiescence always create.

The act in question is entitled "an act to revise the charter of the city of Detroit," approved February 5th, 1857. Chapter 6 of this revised charter relates to the "Recorder's Court," and among other things provides that the court shall have original and exclusive jurisdiction of all prosecutions for crimes committed in Detroit, not cognizable by the police court or by justices of the peace; but this was not to prevent the grand jury of Wayne County from inquiring into crimes committed within the city. Section 5. Another section (sec. 13) required that "All indictments for offenses committed within the limits of the City of Detroit, which may be found and presented to the circuit court for the County of Wayne, by the grand jury of said county, shall be forthwith certified and transmitted by the clerk of said circuit court to said recorder's court; and thereupon said recorder's court shall have a full and complete jurisdiction of said indictments, as if the same had been

originally presented to said recorder's court, and shall have full power to take all further proceedings thereon." Charter, ch. 6, § 120. The court also was given jurisdiction of by-law cases, and some others.

There is much awkwardness in including within a city charter provisions affecting judicial proceedings in courts having general jurisdiction outside and beyond the city. But by the previous charter of Detroit there had always existed a municipal court known as the mayor's court, in which the recorder might sit alone. Laws 1847, p. 96. The charter of 1857 creating the recorder's court, gave it the same jurisdiction with the old mayor's court to whose powers and duties it succeeded, but in addition it gave the criminal jurisdiction before mentioned, which had up to that time been in the circuit court for the County of Wayne.

We think that it cannot be said the increase of jurisdiction of this court can be held beyond the purview of a city charter if the court could be provided for at all. But the court in some form had always been regulated by the city charter, before the constitution of 1850 was adopted, and must be regarded as not improperly included. We think that the court, so far as it could be entrusted with jurisdiction at all, was lawfully provided for in the charter, and did not need a separate statute.

We are not now called on to decide upon the validity of any of this legislation except as applied to the case before us. The question is whether the recorder's court can lawfully try crimes, and whether it can do so on an indictment found in the circuit court for the county of Wayne.

The constitution provides that "Municipal courts of civil and criminal jurisdiction may be established by the Legislature in cities." Article 6, sec. 1.

We have already held that the Legislature need not confer both civil and criminal jurisdiction on the same court. *People ex rel. Covell v. Treasurer of Kent County,* 36 Mich., 332.

We have also considered that there was no objection to giving them jurisdiction of the same kinds of cases originally triable in the circuit courts, so long as no constitutional authority of the circuit courts should be interfered with. *People ex rel. Jones v. Judge of Kent Circuit*, 35 Mich., 494; *Heath v. Kent Circuit Judge*, 37 Mich., 372; *Allen v. Kent Circuit Judge*, 37 Mich., 474.

We find nothing in the constitution to prevent original jurisdiction in a municipal court over crimes committed within a city. No provision has been suggested having such an effect, and the original jurisdiction of circuit courts, civil and criminal, is subject to legislative exceptions. They have jurisdiction when not "prohibited." Article 6, § 8.

Nor is there any rule that we are aware of why suits may not be transferred from one court of original to another court of concurrent jurisdiction, unless at such a stage as to involve a conflict. This subject was considered as to civil causes in the cases before cited. The practice is not unknown in criminal cases.

A change of venue in this State where we have no *nisi prius* system, is to all intents and purposes beyond mere form, a transfer of causes. In the courts of the United States criminal indictments may be transferred for trial from district to circuit courts and *vice versa.* Rev. Stat. of U. S., §§ 1037–1039. It was a very usual practice at common law to remove indictments before trial into the Queen's Bench from the quarter sessions and assizes, and from the mayor's court of London, counties palatine and special jurisdictions, and to transfer them from one commission to another. Fitzh. N. B., 243, 245, 246; 1 Hale P. C., 157, 158; 2 Hale P. C., 41, 44, 147, 198, 211, 212, 213.

The objection concerning the summoning of juries from a smaller vicinage than at the circuit can hardly have much force, inasmuch as it was formerly regarded as desirable if not essential to select as many jurors as possible from the immediate neighborhood where the

offense was committed.   A jury of the city in this respect is more correctly a jury of the vicinage than one taken from the body of the county.

Without attempting to speculate on the very extreme possibilities put forth on the argument, we have not been satisfied that the legislation giving exclusive jurisdiction to the recorder's court of crimes committed in Detroit is invalid.   The older legislation under the first constitution had given the police court of Detroit exclusive jurisdiction for the trial of petty offenses committed in the city, and the examination of all others.   This court was preserved by the Constitution of 1850, and the Detroit recorder's court is the result of legislation of the same character.   It is quite possible some powers given to that court are illegal, but we do not discover any defect in its original criminal jurisdiction to try indictable offenses.   It will be time enough to consider the position of a circuit court in a county which is coterminous with a city when such a county is created, and when municipal courts are continued within it.

We discover no error except in the allowance of assistance in the prosecution by the counsel of private prosecutors.   We are not at liberty to overlook such an error from any impression that the conviction would have been had without him.   The rejection of such prosecutors is in the public interest and the rule is one which should be enforced.

It must be certified to the recorder's court that the verdict should be set aside and a new trial had on the indictment.

The other Justices concurred.