## THE STATE OF KANSAS v. J. C. WILSON.

1. COUNSEL PRIVATELY EMPLOYED TO ASSIST PROSECUTION, *When Not Error.* On the trial of a party charged with the crime of murder in the second degree, the defendant was represented by three counsel. The county attorney was at his request assisted by one counsel, whose compensation was received from the father of the deceased. Notwithstanding the objections of defendant, the court permitted such private counsel to assist in the trial. After the state had rested and defendant had commenced offering testimony, it was disclosed that such assisting counsel had been, pending the trial, appointed deputy county attorney. Objection was made to his further participation in the trial, and overruled. Nothing in the record tends to show any surrender of the control of the prosecution by the county attorney, or any ungentlemanly or unprofessional conduct on the part of the assistant counsel, or any undue zeal in the prosecution, or any oppression of the defendant. *Held,* That no error affecting the substantial rights of defendant, or calling for a reversal of the judgment against him, appears from such participation of privately-employed counsel in the trial.

2. EVIDENCE *of Former Testimony of Deceased, Properly Admitted.* Defendant was arrested and a preliminary examination held on a charge of an assault with intent to kill. On such examination the testimony of the party assaulted was taken. This testimony was taken at the rooms of the witness, he being unable to move therefrom, and in the presence of the justice and the counsel for defendant, the defendant himself being absent. He could have been present if he had desired, but preferred not to be. Subsequently the party assaulted died, and a charge of murder was preferred in lieu of the original charge of assault with intent to kill. Upon the trial upon this charge, evidence was received of the testimony given by such deceased witness on the preliminary examination. *Held,* No error.

3. ────── The admission of this testimony did not render incompetent and inadmissible, evidence of the dying declarations of such deceased witness subsequently made.

4. DYING DECLARATIONS, *When Admissible.* Dying declarations, to be admissible, must be made under a sense of impending death; but it is not necessary that the declarant state that he is expecting immediate death; it is enough if from all the circumstances it satisfactorily appears that such was the condition of his mind at the time of the declarations.

5. MEMORANDUM, ETC., *How to be Used in Evidence.* A witness was called who heard the dying declarations, and testified that at the time he made a minute or memorandum of them. *Held,* That, as such memo-

randum was not of itself competent evidence, and could only be used to refresh the witness's recollection, the witness might testify as to the declarations without producing the memorandum, and without such evidence of its loss· and a proper search for it as would open the door to parol testimony as to its contents as a lost instrument.

*Appeal from Harvey District Court.*

AT the September Term, 1879, of the district court, the appellant, *Wilson*, charged with the murder of one Benjamin Ball, was tried therefor, found guilty of murder in the second degree, and sentenced to fifteen years' imprisonment in the state penitentiary. From this judgment he appeals to this court. The facts sufficiently appear in the opinion.

*Bowman & Bucher*, and *W. E. Lathy*, for appellant.

*John Reid*, county attorney, for The State.

The opinion of the court was delivered by

BREWER, J.: The defendant having been charged with the murder of one Benjamin Ball, tried, and found guilty of murder in the second degree, brings the case here on appeal, and says the court below in the trial erred in the following particulars, as appears from the record filed in this court, to wit:

"1st. Permitting J. W. Ady, Esq., to appear as attorney on behalf of the state.

"2d. Permitting said J. W. Ady, Esq., to continue in the case after he had become deputy county attorney, and having been employed by, and received fees from, the father of the deceased.

"3d. Admitting in evidence the statement made by deceased in a preliminary examination in a different prosecution, for an offense different from the one for which he was being tried, the defendant himself not being present at said preliminary examination.

"4th. In admitting the alleged dying declarations of the deceased, without sufficient foundation; without requiring the best evidence; and because deceased's testimony under oath had been given to the jury."

The first two objections may be considered together. It

appears that Mr. Ady took part in the trial of the case at the request of Mr. Reid, the county attorney, and under employment from the father of the deceased, Benjamin Ball. After the state had rested, and during the examination of defendant's witnesses, it was disclosed that pending the trial, Mr. Ady had been appointed deputy county attorney.   It does not appear that the county attorney left the case and turned it over to Mr. Ady to try, nor that he gave up any control of it, but simply that as the defendant appeared defended by three counsel, he requested Mr. Ady, whose compensation came from the father of the deceased, to assist him in the trial. Neither does the record disclose anything in the bearing and conduct of Mr. Ady ungentlemanly, unprofessional, or in any respect trespassing upon the rights of the defendant, or the proprieties of a court room.   The case is rested upon the simple proposition that it is error to permit the county attorney to be assisted by counsel whose compensation comes from parties personally interested in or affected by the wrong complained of.   The statutes make it the duty of the county attorney to appear in the district court and prosecute all criminal cases.   There is also this section, ( Comp. Laws 1879, p. 299 § 140:) "No county attorney shall receive any fee or reward from, or on behalf of, any prosecutor, or other individuals, except such as are allowed by law for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counsel for either party, other than the state or county, in any civil action depending upon the same state of facts upon which any criminal prosecution commenced, but undetermined, shall depend."

Now, that the general purpose and scope of these provisions was to substitute a public for a private prosecutor, may be conceded, but that they have the effect claimed for them by the defendant of preventing the county attorney from availing himself in the trial of a case of any assistance offered by parties personally wronged by the crime, we cannot believe.   It is true that the supreme court of Michigan, in the case of *Meister v. The People*, 31 Mich. 101, seem to as-

sent to such a claim and take that view of the effect of statutory provisions like ours. See also 38 Mich. 250; *People v. Hurst*, 41 Mich. 328. Unquestionably a private individual has no longer any right to prosecute another for crime, no right to control any criminal prosecution when once instituted. A criminal prosecution is a state affair, and the control of it is in the public prosecutor.

Whether the district court may permit private counsel to appear in any case, notwithstanding the objections of the county attorney, and on the other hand, whether the court may prevent any such appearance, although requested by the county attorney, are questions not now before us. It may be that the court, having a due regard for the proper administration of the law, and to protect an accused from over-zealous prosecution or a feeble prosecutor from being overborne by wealth, talent and influence, may prevent or permit private counsel. Here, the county attorney requested and the court permitted. If such assistance be ever permissible, there was no error in permitting it in this case. Certainly such assistance is not in terms prohibited. Nothing in fact is said about it. Is it not an interpolation to read a prohibition? Again, full force is given to the statute without any such prohibition. The purpose of a public prosecution is to prevent the use of the criminal law to gratify private malice or accomplish personal gain. This purpose is fully subserved when the control of the case is with the county attorney. As to the argument that if private counsel be permitted, the county attorney will be influenced by their wishes and defer to their views and thus in effect a private be substituted for a public prosecution, a satisfactory reply is, that if he is disposed to so yield and defer, he will be as apt to do it when those suggestions and wishes are made known to him outside the court room, and that there is less danger of wrong by permitting private counsel to appear and act openly in the presence of the court, than by shutting them out from any open participation in the trial and leaving them to their private and secret

suggestions to him in his office. Publicity prevents wrong, and the courts can alway check undue zeal.

Further, public justice sometimes requires that the public prosecutor shall have assistance, and that too when the assistance can only come from private sources. The county attorney may be crowded with business, and unable to give due attention to the preparation or trial of the case. He may be young and inexperienced, and the defendant, wealthy or with wealthy friends, confronts him with a long array of the ablest and most experienced counsel. Neither he nor the court nor both together can employ counsel at the public expense. No one is expected, or will be apt to waste time and labor without compensation. Parties interested in, or affected by the crime, may stand ready to furnish him the assistance he needs. Does not public justice require that he be permitted to avail himself of such offered assistance? If the argument of defendant were correct, the county attorney, although needing and wishing assistance, could neither employ it, nor accept it when employed by others. We think the true construction is, to take the statute as it reads, as prohibiting the public prosecutor from accepting private compensation and giving him the control of all public prosecutions, leaving to him a discretion as to the matter of accepting offered assistance, subject to the power of the court to interfere and prevent any oppression of the defendant, and holding him personally responsible for any violation of the statute or malfeasance in office.

It may be conceded that the same rule as to accepting compensation from private parties applies to the deputy as to the principal officer, and that the appointment of Mr. Ady as deputy should not have been made pending the trial. But is that such an error, or rather is the continuance of Mr. Ady in the trial after the appointment, such an error as compels a reversal? We think not. The appointment was probably made from a mistaken notion as to the right to accept the services of privately-employed counsel, and to correct any error in that respect. It does not appear to have been made,

13—24 KAS.

or at any rate called to the attention of the court, until after the state had rested, and while the defendant was offering his testimony. No imputation of receiving private compensation is made against the county attorney, the gentleman having charge of the prosecution. His control of the case does not appear to have been questioned. To change counsel pending a trial is generally a mistake. For one to leave is often equally unfortunate. And we cannot see how the mere fact of Mr. Ady's appointment as deputy county attorney pending the trial, can have wrought any substantial wrong to the defendant; and only substantial errors are to be regarded. We conclude, therefore, that in this respect no substantial error appears. (*The State v. Bartlett*, 55 Me. 200; *Commonwealth v. Knapp*, 10 Pick. 478; *Commonwealth v. Williams*, 2 Cush. 582.)

Passing now to the next error complained of, the facts are these: The deceased, Benjamin Ball, lived some two or three weeks after the injury. Defendant was at first arrested on a charge of an assault with intent to kill said Ball. Upon an examination for that offense, the testimony of Ball was desired. Being unable to move, the justice and counsel for defendant went to his room and took his testimony. The defendant was at liberty to go, but preferred not to, and was represented by his counsel. Upon the death of Ball, the charge was changed to that of murder in the second degree, and Ball's testimony thus given on that preliminary examination admitted. Was this error?

Of the general doctrine concerning the competency of the testimony of a deceased witness given in a former action between the same parties, counsel make no question, but they suggest three things which, as they claim, remove this from the operation of the general rule. The charge was not the same; the defendant was not present; and there was no trial, but only a preliminary examination. But we do not think that these matters affect the question. Greenleaf, in his work on Evidence, (13th ed., vol. 1, § 163,) thus states the rule, and the reason of it: "The chief reasons for the exclusion of

hearsay evidence, are, the want of the sanction of an oath, and of any opportunity to cross-examine the witness. But where the testimony was given under oath, in a judicial proceeding in which the adverse litigant was a party, and where he had the power to cross-examine and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, after the decease of the witness, in any subsequent suit between the same parties." And again, in the succeeding section the author adds: "The admissibility of this evidence seems to *turn* rather *on the right to cross-examine,* than upon the precise nominal identity of all the parties." The two essentials, the oath and the right to cross-examine, existed in this case. There was a judicial proceeding to which the defendant was a party. The testimony was given under oath. The defendant had a right to be present, was in fact represented by counsel, and could have cross-examined fully and without limit or restraint. The act, the subject of inquiry, was the same; and while the charge is different, the difference results from matters occurring after the giving of the testimony, and in no manner changing the actual facts of inquiry. It is said by Greenleaf, in the section from which we last quoted, that "if, in a dispute respecting lands, any fact comes directly in issue, the testimony given to that fact is admissible to prove the same point or fact in another action between the same parties or their privies, though the last suit be for other lands;" and in support thereof a large list of authorities is cited. In the case of *United States v. Macomb,* 5 McLean, 286, the testimony of a witness since deceased, given on a preliminary examination, was held admissible on the trial of the indictment found for the same offense. See also *Davis v. The State,* 17 Ala. 354; *Kendrick v. The State,* 10 Humph. 479; *Rex v. Barber,* 1 Root (Conn.) 76; *Bostwick v. The State,* 3 Humph. 344; *State v. Campbell,* 1 Rich. (S. C.) 214; *United States v. Wood,* 3 Wash. Ct. Ct. 440; *State v. Atkins,* 1 Overton, 229. Both reason and authority unite to support the competency of this testimony. It may be remarked that

before it rested and after the introduction of the dying declara-
tions of said Ball, the state asked leave to withdraw this evi-
dence of Ball's testimony on the preliminary examination,
but leave was refused by the court.   Whether this was be-
cause counsel had doubts of its competency, or of its effect
upon the competency of the dying declarations, we cannot tell.
But we think the testimony competent, and that the court
very properly refused to permit its withdrawal.

We pass now to the only other matter discussed by counsel,
and that is, the dying declarations.   As to these, it is insisted
that no sufficient foundation was laid; and, secondly, that the
best evidence of such declarations was not produced.   These
declarations were made some four or five hours before death,
and after the doctor had told Ball there was no hope, and that
he could not live.   They were made in response to an inquiry
as to whether he wanted to make any statement concerning
the transaction.   When advised by the physician that there
was no hope, he requested that a Mr. Harris be sent for to
come and pray with him.   He also said that he was not afraid
to die, or was willing to die, and that he forgave the parties
who were the cause of his death.   Of course the only ques-
tion is, whether these declarations were made under the sense
of impending death.   Now the deceased had been lying on
his bed for many days, suffering from this wound.   The doc-
tor testifies that he thinks that the deceased had given up
hope, even before he advised him that there was no hope.
When so advised, he requests that arrangements be made for
prayers; and then upon being asked, gives his statement of
the transaction in which he received his mortal wound.   It
is true that such declarations must be made under a sense of
impending death; but, as Greenleaf in his work on Evidence
says, "It is not necessary that they should be stated, at the
time, to be so made.   It is enough, if it satisfactorily appears,
in any mode, that they were made under that sanction;
whether it be directly proved by the express language of the
declarant, or be inferred from his evident danger, or the opin-
ions of the medical or other attendants, stated to him, or from

his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind." (1 Gr. Ev., 13th ed., § 158.) We think that it was satisfactorily shown by all the surrounding circumstances that these declarations were made under a sense of impending death, and were therefore admissible in evidence. The doctor testified that he made a minute of the declarations, but had lost it. Objection was made to any evidence of those declarations without the production of that minute or memorandum, but this objection was overruled. It is unnecessary to determine whether sufficient evidence was given of loss and search to open the door to parol testimony of the contents of this memorandum as of a lost instrument, for if the memorandum had been produced, it would not have been admissible. It was no official document, but simply a memorandum made by an individual of what he heard another party say. It would have been of aid in refreshing the witness's memory, but was not of itself admissible testimony.

A final objection is made, that these declarations should not have been admitted, because the testimony of the deceased given on the preliminary examination had been. The argument is, that dying declarations are admitted only because of a necessity therefor; that here was no such necessity, for the very testimony of the deceased was already before the jury; that it parallels the case of a deposition which is not admissible when the witness is present in the court room. We do not think the argument sound, for while necessity was no doubt the reason which relaxed the rule excluding hearsay testimony in favor of dying declarations, yet it is not indispensable that such necessity exist in each individual case. Thus, though there were many witnesses of the fatal encounter, that fact would not exclude the dying declarations of the deceased. Indeed, the admissibility of dying declarations in prosecutions for homicide has become an established rule of evidence, and such testimony is competent and received independent of any question as to the paucity or abundance of other testimony.

These are all the matters presented for our consideration; and in them appearing no error, the judgment will be affirmed.

VALENTINE, J., concurring.

HORTON, C. J.: I dissent, and base my opinion upon the cogent, and to me the satisfactory reasoning of Mr. Justice Campbell, in the case of *Meister v. The People*, 31 Mich. 99; and therefore I think the judgment of the trial court should be reversed.