STATE Respondent, *v.* TIGHE, Appellant.

(No. 1,858.)

(Submitted November 11, 1902. Decided January 2, 1903.)

*Criminal Law—Homicide—Jury Panel—Demurrer — Exemption from Jury Duty—Evidence—Res Gestae—Necessity of Swearing and Examining Eyewitnesses—Private Attorney Assisting Prosecuting Officer—Instructions—Self-Defense— Examination of Jurors on Their Voir Dire—Practice—Cross-Examination—Argument of Counsel—Time Limitation.*

1. In view of Penal Code, Sections 2170, 2036, 2037, 2038, 2039, *held* that in a criminal case a "demurrer" to a challenge to the jury panel was equivalent to an exception to the challenge, the mere name not being important.

2. Action of the court in sustaining or allowing a demurrer to a challenge to the jury panel, and in impaneling the jury amounted to a "disallowance" of the challenge, so as to render the question raised by the challenge reviewable on appeal.

3. Under Code of Civil Procedure, Sections 232, 241, 243, 262, Subdivision 3, *held* that where the jury commissioners intentionally omitted from their list persons known to them to be exempt from jury duty, though they were competent jurors and if summoned would have been required to serve unless they seasonably claimed the benefit of the exemption, was a mere irregularity, not affecting any substantial right of a defendant in a criminal case, hence no ground for challenge to the panel.

4. In a criminal case it was proper to permit an attorney to appear as an assistant for the prosecuting officer and participate in the trial, though he was being compensated by private persons. (Mr. Justice Milburn dissenting.)

5. Where the evidence before the jury was such as would have warranted defendant's conviction of any degree of felonious homicide, an instruction to find him guilty of manslaughter or to acquit was properly refused.

6. In a criminal case a witness for defendant on a cross-examination testified that his evidence before the examining magistrate was given while he was drunk. Part of the testimony was read to the witness, and used for impeachment purposes, but the writing was not introduced. Defendant's counsel then offered the testimony for the purpose of showing that in its entirety it was not contradictory of the witness' testimony on trial. *Held,* on appeal, that its exclusion was not apparent error, inasmuch as defendant had the opportunity, of which he availed himself, of interrogating the witness further, and the bill of exceptions contained no copy of the paper, or substance of its contents, so that it could be determined whether the remainder of the testimony on the examination was or was not inconsistent with the testimony on trial.

7. Penal Code, Section 2082, enacts that on a trial for murder or manslaughter it is not necessary for the state to call as witnesses all persons who are shown to have been present, but the court may require all such persons to be sworn. *Held,* not error for the court in a criminal case to refuse to require all the eyewitnesses to be sworn, unless it abuses its discretion.

8.  In a criminal case it was not error for the court to exclude as immaterial a question put to a witness on direct examination by defendant as to whether he had not been subpoenaed by the state. (See facts.)

9.  On a prosecution for murder, deceased having been killed in an affray with defendant, evidence of the conduct and acts of the parties from the inception of the affray to its end, and that neither called for aid or assistance while struggling, was admissible as part of the *res gestae.*

10. On a prosecution for murder, deceased having been killed in an affray with defendant, it was the theory of the defense that defendant did not intend to stab deceased, but that the knife, which he had seized from an instinct of self-defense, must have come in contact with deceased accidentally while they struggled, and defendant offered to show that in less than a minute after the fatal wound, and while he was being led away in a highly excited and angry condition and with a bleeding face, at a point from forty to fifty feet from the spot where the killing occurred, a person remarked that he was going for a physician for deceased, and defendant answered, "Hell, he does not need a doctor ; he is not hurt." Code of Civil Procedure, Section 3126, provides that where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute, or evidence of that fact, such declaration, etc., is evidence as part of the transaction. Section 3146 declares that evidence may be given of an act, declaration, or omission forming part of a transaction. *Held,* error not to admit the offered declaration, the question whether it was part of the *res gestae* being for the jury.

11. *Held,* that certain instructions given by the trial court, touching the law of self-defense, though technically inaccurate, were not prejudicially erroneous.

12. In a criminal case it was proper for counsel for defendant to ask each juror, when called and sworn on his *voir dire,* whether he was a member of the Knights of Pythias, or of the Order of Odd Fellows, or of the Order of Sons of Hermann ; his counsel having stated that decedent was probably a member of one or more of those societies.

13. Where, on a prosecution for murder, a map of the room in which the affray took place was put in evidence by the state, and the accuracy of the map was disputed, it was error not to permit defendant to show, on cross-amination of a witness who made the map, directions given to the witness by the county attorney as to its preparation.

14. On a prosecution for murder a witness testified that the expression on the face of deceased at the time of the killing indicated fear ; that he "seemed to be scared" ; and another witness testified that prior to the homicide defendant, while speaking about deceased, was emphat'c in his language, and that the expression of his face showed anger. *Held,* that the testimony, in so far as it concerned anger and fear, was not objectionable as statements of inferences from facts rather than facts themselves, but each statement was admissible, being "a shorthand rendering of facts."

15. In a capital case it is error for the court to limit in advance the time which counsel for defendant may employ in his argument to the jury.

*Appeal from District Court, Broadwater County; W. L. Holloway, Judge.*

THOMAS TIGHE was convicted of murder in the second degree, and appeals. Reversed.

*Mr. J. E. Kanouse,* and *Messrs. Nolan & Loeb,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. JUSTICE PIGOTT delivered the opinion of the court.

Thomas Tighe was accused by information of the murder of one Paul Koch. He was convicted of murder of the second degree, and appeals from the judgment and from the order denying him a new trial.

1. Before the jurors were sworn, the defendant challenged the panel upon the ground that the jury commissioners, in preparing the list for 1902, had intentionally omitted therefrom certain persons who were known to them to be exempt from jury duty, although such persons were also known to them to be in all respects competent jurors. In the challenge the defendant offered to prove the alleged facts by the oral testimony of the jury commissioners. To the challenge the state excepted by interposing a demurrer to the effect that the facts alleged were insufficient in law. The demurrer was sustained, and the jury impaneled, the defendant excepting.

The attorney general contends that the question of whether the court erred in sustaining the demurrer to the challenge cannot be considered here. In substance, his argument is as follows: There is no provision in the Penal Code permitting a *demurrer* to a challenge; the only exception which may be taken with reference to the decision upon such a challenge is that authorized by Section 2170 of the Penal Code, providing for exceptions by the defendant to a decision of the court in *disallowing* a challenge to the panel; it does not appear that the challenge was ever *disallowed;* therefore the error assigned is not before this court. His conclusion does not follow. Section 2036 of the Penal Code reads: "If the sufficiency of the facts alleged as ground of the challenge is denied, the adverse party may except to the challenge. The exception need not be in writing, but must be entered on the minutes of the court, or of the stenographer, and thereupon the court must proceed to try the sufficiency of the challenge, assuming the facts alleged therein to be true." If, as against the exception, the challenge be

found sufficient, the court may permit the exception to be withdrawn, and the facts alleged to be denied; if the exception be allowed, the challenge may be amended by the court's permission. (Section 2037, Penal Code.) If the truth of the matter set up in the challenge be denied, the court must try the issue of fact. (Section 2038, *Id.*) If the challenge be allowed, either upon an exception for insufficiency in law or upon a trial of the issue of fact, the jury must be discharged. If a challenge be disallowed in either case, the jury is to be impaneled. (Section 2039, *Id.*) True, the Penal Code does not designate as a demurrer an exception to a challenge for insufficiency of the facts stated therein; but the mere *name* is not important; such an exception is equivalent to a demurrer, for the denial of sufficiency admits the allegations to be true in point of fact. It is immaterial whether the denial of sufficiency be expressed by the use of the word "exception" or the word "demurrer;" each performs the same office. So much for the name. As to the statement that the challenge was not disallowed, it is enough to say that the action of the court in sustaining or allowing the demurrer or exception and impaneling the jury was a disallowance of the challenge. These are the only technical objections suggested, and the question of whether there was error is, therefore, presented for decision.

The persons whose names were omitted from the list were competent jurors. Their competency was known to the chairman of the board of county commissioners, the county treasurer, and the county assessor, who were the jury commissioners. They intentionally omitted the names from the list. Section 232 of the Code of Civil Procedure declares that persons engaged in certain pursuits or holding certain public offices are exempt from liability to serve as jurors. All the persons so excluded were exempt from liability to act as jurors, but, if they had been summoned, they would be required to serve, unless they seasonably claimed the benefit of the exemption. Section 241 of the same Code prescribes that the jury commissioners "must select, from the last assessment roll of the county, and make a list of the names of all persons whom they believe to be

competent and qualified to serve as trial jurors." As has been said, the commissioners purposely excluded from the list the names of persons known to them to be in every respect competent jurors. Not every deviation from the law in making a jury list will be cause for challenge to the panel. Many errors and mistakes are to be overlooked. All that may reasonably be required is that the commissioners, in selecting the names, in good faith substantially comply with the law. The omission of those whom they know or believe to be competent and qualified is an irregularity, which will, under some circumstances, amount to a material departure from the law, and a consequent denial of the litigant's right to have a proper list in the jury box.

We are satisfied that the omission in the case at bar was a mere irregularity, not affecting any substantial right of the defendant. The list prepared by the commissioners is required to be delivered to the clerk of the district court, who places the name of each person thereon in the jury box. (Sections 242, 243, Code of Civil Procedure.) Jurors for a term or session of court are selected by drawing names from the box. Subdivision 3 of Section 262 of the Code of Civil Procedure provides that, "if the name of any person is drawn from said box * * * who is exempt from jury service, and the fact shall be made to appear to the satisfaction of the court, the name of such person shall be omitted from the list, and the slip of paper having such name on it shall be destroyed, and another juror drawn in his place." The names of the persons drawn shall be certified to the sheriff for service. Now, the names omitted by the jury commissioners from the list furnished by them were of persons admittedly exempt from jury service. If the names of such persons had been on the list, it would have been the duty of the district court, the fact of exemption appearing, to omit them in drawing and selecting the jurors for the term; in other words, the court is commanded by the statute to exclude those appearing to be exempt from service. How, then, can the defendant have been injured by the irregular action of the jury commissioners in omitting names from *their* list which the court, if advised of the exemption, was required to omit from *its* list?

The theory of the statute is that in drawing jurors for a term or session persons exempt will not ordinarily be selected, and will never be selected if the exemption is shown to the court; but if they are selected and summoned, they must serve, unless they assert the privilege. The persons whose names were omitted by the commissioners were exempt in point of fact, and the defendant was not entitled to have them, or any of them, drawn by the court or summoned by the sheriff. To hold the challenge good in this case would be to adhere strictly to the letter of Section 241 without considering other provisions which serve to express the purpose of the legislative assembly. Counsel for the defendant cite some remarks in *State* v. *Bowser,* 21 Montana Reports, 133, 139, (53 Pac. 179), in support of the contention that the challenge should have been allowed. The remarks were not necessary to the decision, and were *obiter,* for this court held that the offer to prove the averments of the challenge was not sufficient. It may further be observed that the remarks would probably not have been made if the court had considered Subdivision 3 of Section 262, *supra.* The court rightly disallowed the challenge.

2. At the beginning of the trial the defendant objected to the appearance in behalf of the state of R. R. Purcell, Esq., whose name had, on motion of the county attorney, been entered as an assistant to that officer, on the ground that Mr. Purcell had been employed by private prosecutors, by whom, and by whom alone, he was to be compensated. In support of the objection the defendant offered to prove the truth of the averments, but the court refused to permit this to be done, and overruled the objection. Much might be said in favor of the action of the court, and much against it. Many courts declare that counsel employed and compensated by private persons may, with the court's consent, assist in the prosecution of criminal cases. (*State* v. *Wilson,* 24 Kan. 189, 36 Am. Rep. 257; *U. S.* v. *Hanway,* 2 Wall. Jr. 139, 26 Fed Cas. 105, 129 (No. 15,-299); *Polin* v. *State,* 14 Neb. 540, 16 N. W. 898; *Bradshaw* v. *State,* 17 Neb. 147, 22 N. W. 361, 5 Am. Ct. Rep. 499; *State* v. *Bartlett,* 55 Me. 200, 220; *Hopper* v. *Com.,* 6 Grat. 684;

*Siebert* v. *State,* 95 Ind. 471, 476; and see 1 Bish. Cr. Proc. Sec. 251, and *People* v. *Blackwell,* 27 Cal. 66.)   Other courts have interpreted statutory provisions prohibiting the state's attorney from receiving any compensation from or in behalf of any prosecutor for his services in a criminal case as preventing the appearance for the state of counsel employed by or in behalf of private persons. (*Biemel* v. *State,* 71 Wis. 444, 37 N. W. 244; *Meister* v. *People,* 31 Mich. 99; *People* v.' *Hurst,* 41 Mich. 328, 1 N. W. 1027; *Com.* v. *Knapp,* 10 Pick. 477, 20 Am. Dec. 534; and *Com.* v. *Williams,* 2 Cush. 582.)   For nearly forty years the practice in the territory and state of Montana has been to permit counsel employed and paid by private persons to assist in the prosecution of criminal cases. This practice has amounted to a contemporaneous interpretation of the law, which, in view of the doubt touching the correct solution of the question, should not be disturbed or changed by the court.   The writer of this opinion, speaking for himself only, thinks the practice is in accord with the law, irrespective of the contemporaneous interpretation. The legislature may abolish the practice. As the matter stands at present, the district courts may, in their discretion, permit such counsel to appear and participate in the trial of criminal actions as assistants to county attorneys. In *State* v. *Whitworth,* 26 Montana Reports, 107, (66 Pac. 748), the question now raised was not involved.

3.   The defendant argues that the verdict is contrary to, and without support in, the evidence. He insists that the circumstances of the homicide show that the killing was without malice, and was either manslaughter, or justifiable on the ground of self-defense. He prayed the court to direct the jury that they must find him guilty of manslaughter or acquit him altogether. This the court refused to do.

The defendant was foreman of the East Pacific mine. There was evidence to show that he had general supervision of the kitchen, of the dining room, and of the entire mine, and was empowered to hire and discharge the men; and that one of his duties was to see that the meat and other supplies were weighed, and to verify the bills. Koch, the decedent, was the cook. On

March 6, 1902, a few minutes after 12 o'clock noon, the defendant entered the kitchen on his way to the adjoining dining room, where dinner was being served to 40 or 50 men employed at the mine. He asked Koch whether he had weighed the meat that had been delivered just before noon. Koch answered in the negative, and the defendant then said he would see that the meat was weighed thereafter, and moved away from Koch and toward the swinging door leading into the dining room. On the part of the state the evidence tended to prove that Koch then said that, if the defendant wanted the meat weighed, he could do it himself; that the defendant told Koch not to get too "gay" or too "funny," to which Koch answered by an obscene invitation; that the defendant then walked towards Koch, who struck the defendant on the nose and eye, knocking him against the wall; that they then "clinched" and fell to the floor, and in the struggle went through the door of the dining room; that, after struggling there, the defendant grasped a knife from the bread table, and stabbed Koch in the heart at a time when Koch had ceased fighting, and had released the defendant, and then struck Koch twice over the head with the knife. There was evidence on behalf of the defendant to the effect that when he asked Koch if he had weighed the meat the latter said it did not "have to be weighed," and defendant told Koch it was his duty to weigh it, upon which the obscene invitation was extended to the defendant; that the defendant then told Koch not to "get funny," and Koch replied by saying, "Get out of here, you son of a bitch," at the same time starting rapidly toward the defendant; that when he reached the defendant he struck defendant on the cheek, and that, to protect himself, the defendant grappled with Koch, who pressed him to the floor, pushed him toward the wall, and shoved him through the door between the kitchen and the dining room; that as they went through the door the defendant fell against a table, striking his head on the corner, and cutting it; that the defendant was down on his hands and knees and partly on his side, with Koch over him, either kicking him on the head or attempting to do so, and kicking him in the ribs; that while on the floor, with Koch on top, Koch struck him on

the back of the head, at the same time calling him a vile name, and saying he would "fix" him; that Koch then grasped the defendant by the back of the neck, and slung him onto or against the bread table; that the defendant's hands struck the table, and, seeing a knife, "he grabbed" it; that, after the defendant had secured the knife, Koch swung him around against the window; that there was no cessation of the struggle from the first blow by Koch until after the killing; that, when the corner of the table was reached in the fight, the defendant struck Koch on the head with a knife, but that he was not conscious of having stabbed Koch; that defendant considered himself to be in danger of great bodily injury or of losinig his life at the hands of the decedent, and acted in self-defense throughout. Koch was the larger man. There was also evidence of a prior threat by Koch to kick the defendant out of the kitchen, and of some ill feeling on the part of the defendant towards Koch, or of dissatisfaction with him. The evidence was sufficient to justify a verdict finding the defendant guilty of any grade of felonious homicide. If the killing was unlawful, and done with malice aforethought and deliberation, it was murder of the first degree; if unlawful, and with malice aforethought, but without deliberation, it was murder of the second degree; if the killing was unlawful, but without malice, it was manslaughter; and, if the killing was done in necessary self-defense, it was justifiable, and therefore lawful. The instruction requested was properly refused.

4. One McPherson, a witness for the defendant, on cross-examination testified that his evidence before the examining magistrate was given while he was drunk, or at least under the influence of liquor. Part of that testimony was read to the witness, and thus used for impeachment purposes, but the writing was not introduced. Defendant's counsel then offered the testimony of the witness as taken at the preliminary examina-. tion for the purpose of showing that such testimony in its entirety was not contradictory of the testimony delivered by the witness on the trial. To its exclusion the defendant excepted. In this there was no apparent error. In the first place, the de-

fendant had the opportunity—of which he availed himself—of interrogating the witness further as to matters formerly stated by him; and, secondly, it does not appear what the remainder of the testimony given on the preliminary examination was. It is not embraced in the record, and we have no means of ascertaining whether or not it was consistent with his last testimony. The bill of exceptions should contain either a copy of the paper sought to be introduced or the substance of its contents. Without this we cannot consider the question.

5. Certain persons, who were eyewitnesses of the killing, were not called by the state. The defendant asked the court to require counsel to examine them. This the court refused to do, and the defendant excepted. Thereupon the defendant called them as his own witnesses. It is discretionary with the trial court whether all persons who are shown to have been present at a homicide shall be sworn and examined in behalf of the state. Exercise of its discretion will be corrected only in case of abuse. (*State* v. *Rolla*, 21 Mont. 582, 55 Pac. 523; Section 2082, Penal Code.) While the court might well have required all the eyewitnesses to be sworn, we are not prepared to say it erred in refusing to do so. Nor did the court err in excluding as immaterial the question put to the witness Johnston on direct examination by the defendant as to whether he had not been subpoenaed by the state. (*Mann* v. *State* (Ala.), 32 South. 704 (not yet officially reported). Standing alone, the question seems designed to elicit immaterial matter.

6. Evidence of the conduct and acts of the defendant and Koch, and each of them, from the inception of the affray to its end, was competent and relevant. Hence proof of the fact that neither called for aid or assistance while struggling was admissible. It was part of the *res gestae*. The court rightly received it.

7. The defendant testified that he did not intentionally stab Koch; that he had no recollection of stabbing him; his theory being that the stabbing must have occurred by reason of the knife coming in contact with the body of Koch as he and Koch swung towards the window away from the table on which the

knife taken by the defendant had been. The defendant offered to prove that in less than a minute after the fatal stroke, while he was being led away in a highly excited and angry condition, and with a bleeding face, at a point from 40 to 50 feet distant from the spot where the killing occurred, one Bell remarked that he was going for a physician for Koch, and the defendant answered, "Hell, he does not need a doctor; he is not hurt." The court sustained an objection on the ground of incompetency and immateriality, and the defendant excepted. Section 3126 of the Code of Civil Procedure provides that, where "the declaration, act or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence, as part of the transaction." Section 3146 of the same Code declares: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * (7) The act, declaration or omission forming part of a transaction, as explained in Section 3126." "*Res gestae* are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is not hearsay. It is part of the transaction itself. And so long as the transaction continues, so long do acts and deeds emanating from it become part of it, so that in describing it in a court of justice they can be detailed. The question is, is the evidence offered that of the event speaking through participants, or that of observers speaking about the event? In the first case, what was thus said can be introduced without calling those who said it; in the second case they must be called. Nor are there any limits of time within which the *res gestae* can be arbitrarily confined. They vary, in fact, with each particular case. * * * The distinguishing feature of declarations of this class is that they should be the necessary

incidents of the litigated act; necessary in this sense; that they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. They need not be coincident as to time, if they are generated by an excited feeling which extends without break or let-down from the moment of the event they illustrate. In other words, they must stand in immediate causal relation to the act, and become part either of the action immediately producing it or of action which it immediately produces. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." (Sections 262, 263, Whart. Cr. Ev.) We are of the opinion that the declaration offered in evidence should have been received. It was so near the time of the homicide, and followed it so closely, that it may well have been a spontaneous expression, immediately and unconsciously associated with the principal act, of the belief of the defendant and of the state of his mind. It should have gone to the jury for what they might consider it worth. If, upon all the circumstances, the jury should be of the opinion that the declaration was instinctively made under the immediate and compelling influence of the affray, it must be considered by them as evidence tending to show the intent of the defendant at the time the fatal thrust was given; if, on the other hand, the jury should believe the declaration was not spontaneously made under the immediate spur of the transaction, it must be deemed self-serving, and therefore not evidence in his favor. This question was one for the jury upon the same principle that the question of whether alleged confessions admitted in evidence were or were not voluntary—the evidence with respect to the question being conflicting—is submitted to the jury. This rule as to confessions is clearly correct, and finds support in *Commonwealth* v. *Preece,* 140 Massachusetts Reports, 276, (5 N. E. 494; *Commonwealth* v. *Kennedy,* 135 Massachusetts Reports, 543; *Commonwealth* v. *Crossley,* 162 Massachusetts Reports, 515, (39 N. E. 278); and *State* v. *Grover,* 96 Maine Reports, 363, 366, (52 Atl. 757). It is as clearly applicable to the ques-

tion of fact whether declarations are part of the *res gestae* whenever that question arises upon conflicting evidence, or depends upon contradictory inferences either of which may be fairly deduced from uncontradicted evidence. It is the province of the court to determine the question of the admissibility of a declaration. Of course, if a declaration favorable to the party making it is clearly not part of the *res gestae,* it should be excluded by the court; otherwise it should be allowed to go to the jury, to be rejected by them if merely self-serving, but to be considered if the transaction spoke through the declaration. *Territory* v. *Clayton,* 8 Montana Reports, 1, (19 Pac. 293), and *State* v. *Pugh,* 16 Montana Reports, 343, (40 Pac. 861), are not opposed to the holding in the present case. In each of the cases the declaration of the defendant was a self-serving narrative of past events. The court committed prejudicial error in sustaining the objection.

8.   Counsel for the defendant contends that instructions numbered 22 and 23 are prejudicially erroneous. Though they are not technically accurate, we are not prepared to agree with counsel that either was harmful. An opinion thereon is reserved. Under the circumstances of the case the instructions referred to should have been, in effect, these: "(22) On the other hand, if you believe from the evidence that the defendant commenced the affray by assaulting Koch, or by so menacing him as to induce in Koch a reasonable belief that he was in immediate danger of physical violence at the hands of the defendant, then the defendant is not entitled to a verdict of acquittal on the ground that he killed Koch in self-defense, unless the defendant really and in good faith endeavored to decline any further struggle, and in some way, by words or conduct, notified Koch thereof, and thereafter acted only upon a well-grounded fear in him, as a reasonable man, that he was in imminent danger of being killed by, or of receiving great bodily harm from, Koch. The words used by the defendant did not constitute an assault, nor were they sufficient to excite in Koch a reasonable fear that he was about to be assailed by the defendant. (23) If you find from the evidence that at the time he stabbed Koch

the defendant did not, as a reasonable man, believe he was in imminent danger of losing his life or suffering great bodily injury at the hands of Koch, then the killing was not done in self-defense, but was either murder or manslaughter, no matter who began the affray, and even though the defendant had really and in good faith endeavored to decline further struggle, and had so informed Koch."

9.    As the cause must be sent back for a new trial, we shall indicate briefly our views upon the remaining specifications of error.

(a) The defendant asked each juror, when called and sworn on the *voir dire,* whether he was a member of the Knights of Pythias, or of the order of Odd Fellows, or of the order of Sons of Hermann, the purpose being to enable the defendant judiciously to exercise his peremptory challenges. His counsel stated that the decedent had probably been a member of one or more of those secret societies. Upon objection the question was excluded as immaterial, irrelevant and improper. Before the jury were sworn to try the cause, the defendant had exhausted his peremptory challenges. A defendant should be permitted great latitude in examining jurors so as to be in position intelligently to exercise his challenges, and whenever there is a fair doubt as to the propriety of a question it is better to allow it. (*Territory* v. *Campbell,* 9 Mont. 16, 22 Pac. 121.) The questions were proper (*Burgess* v. *Manufacturing Co.* (Tex. Civ. App.), 30 S. W. 1110; Abb. Tr. Brief. Civ. p. 54; *State* v. *Mann,* 83 Mo. 589; *Watson* v. *Whitney,* 23 Cal. 376; *Lavin* v. *People,* 69 Ill. 303; *Union Pacific Railway Co.* v. *Jones,* 21 Colo. 340, 40 Pac. 891), and the court erred in excluding them. Whether the error was prejudicial we do not decide.

(b) The directions given by the county attorney to the witness Wardwell as to the preparation by him of a map of the rooms in which the affray took place, and which map was used by the state on the trial, were sought to be proved on his cross-examination by the defendant. The accuracy of the map was disputed. The testimony sought to be adduced was competent and relevant, and should have been admitted.

(c) The defendant's cross-examination of Stratton was unduly restricted by the court, and the error does not seem to have been wholly cured.

(d) The witness Bloomquist testified for the state that the expression on Koch's face at the time he was stabbed indicated fear; he "seemed to be scared." Tibbetts, a witness for the state, testified that in the February preceding the homicide the defendant, in talking about Koch, was very emphatic in his language, and the expression on his face showed anger towards Koch. The defendant suggests that the witnesses were permitted, in so far as their testimony as to anger and fear is concerned, to state inferences from facts, instead of the facts themselves, and that such testimony should have been stricken out. The objection is without merit. Each statement was "a shorthand rendering of facts," and was admissible. (*State* v. *Lucey,* 24 Mont. 295, 302, 61 Pac. 994.)

(e) The defendant's cross-examination of Tibbitts was improperly limited, but the error seems to have been cured; and so with the cross-examination of Bloomquist.

(g) The court, against the objection and over the exception of the defendant, limited the time of argument to the jury to one hour and three-quarters for the state and to a like period for the defendant. The trial consumed five days, and many witnesses were examined. The case was a capital one. We cannot agree with the assertion made by the attorney general that the court had the right, in its discretion, to submit the case to the jury without giving defendant's counsel an opportunity to argue it. Such an act would be a direct and flagrant violation of rights declared and guarantied by the constitution. To determine in advance just how long a time will be required for counsel to present his client's case to a jury is a delicate task. There is always danger that the time may be too short, and injustice may result. It is always better in prosecutions for felony, and especially in those involving the life of a human being, to allow all the time counsel desire to use, subject, of course, to the power of the court to check excursions and prevent needless repetitions. At least one respectable court has held

that it is error for the judge to predetermine the time allowed for argument in any case of felony. (*Williams* v. *State,* 60 Ga. 367, 27 Am. Rep. 412.)

In so limiting the time for argument by defendant's counsel, the court erred.

The other specifications are palpably devoid of merit, and not worthy of mention. For the errors discussed, the judgment and the order denying a new trial are reversed and the cause is remanded.

> *Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur.

MR. JUSTICE MILBURN: I concur except as to the views and conclusion of MR. JUSTICE PIGOTT in respect of the matter of the employment of private attorneys as prosecutors. As to this I dissent. The private attorney's client is a stranger to the action. The private attorney represents vengeance. The state's attorneys, paid by the people, are expected to represent justice. To express my opinion and the reasons therefor, and to cite the authorities in support thereof, would take more time than is at my disposal.