### TERRY v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. October 3, 1916.)

#### No. 2847.

1. CRIMINAL LAW ☞639(3)—CRIMINAL PROSECUTION—PROCEDURE—APPOINTMENT OF SPECIAL PROSECUTOR.

In a prosecution against a bankrupt for knowingly and fraudulently concealing from his trustee property belonging to his estate, the trial proceeds not under the state act but under the federal Act June 22, 1870, c. 150, 16 Stat. 162, and Act June 30, 1906, c. 3935, 34 Stat. 816 (Comp. St. 1913, § 534), and no complaint can be made that the attorney who represented the petitioning creditors was duly appointed special assistant to the United States district attorney and participated in the prosecution, though, under the state practice, such proceeding would have been improper.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1487, 1488, 1490, 1491; Dec. Dig. ☞639(3).]

2. BANKRUPTCY ⊚⊐495—OFFENSES—EVIDENCE.
    In a prosecution against a bankrupt for knowingly and fraudulently
·concealing property from his trustee, evidence *held* sufficient to take the
case to the jury and warrant conviction.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 912; Dec.
Dig. ⊚⊐495.]

In Error to the District Court of the United States for the Eastern District of Michigan; Clarence W. Sessions, Judge.

George W. Terry was convicted for knowingly and fraudulently concealing, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy, and he brings error. Affirmed.

N. C. Bigelow, of Detroit, Mich., for plaintiff in error.

Clyde I. Webster, U. S. Atty., and B. B. Selling, Sp. Asst. U. S. Atty., both of Detroit, Mich.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. Terry, the defendant below, was indicted, convicted, and sentenced for knowingly and fraudulently concealing, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy. He seeks a reversal of the judgment rendered against him. On December 24, 1907, his stock of goods, which was insured for $8,000, was substantially destroyed by fire. Aside from some uncertain small sums owing for household and living expenses, wages due clerks, and a bank indebtedness slightly in excess of $1,800, all of which liabilities he paid, he owed his merchandise creditors more than $5,400. By suffering a deduction of one per cent., he collected on his insurance policies, by January 10, 1908, $6,000. He also claims to have received $500 from a brother-in-law for his equity in a farm, and $500 from a son-in-law for the unconsumed portion of his goods. On January 11, he wrote his creditors that the insurance companies had taken advantage of the 60-day clause in their policies, but that when a full settlement was made he would at once inform them. On the following day, on account, as he claims, of the ill health of himself and wife, having reduced to cash the several payments made to him and the sums received from his son-in-law and brother-in-law, he and his wife left for California, but without giving any information as to his destination, unless to his immediate relatives. The cash carried with him on his person must have been more than $4,000. Excepting $490, he did not at any time deposit in bank any of the money received by him. He obtained possession of his funds so deposited by delivering checks to his daughter and son-in-law, who cashed the same and delivered to him the proceeds. He did not take with him a list of his creditors or any statement of how much he owed them, or "think very much about it." He was unable to give any reason why he did not pay his merchandise creditors after the fire, other than that there was a panic on and money was hard to get, and, considering the condition of his wife, he did not think it was right to use up all of his money, self-preservation being the first law of nature. He visited various points in California, and in late January went to Callexico on the Mexican

border, where he claims some one took from him, when he was intoxicated, about $3,000, leaving him only his return ticket to Redlands and a few pieces of silver. At another time he states he does not know what became of that sum. He made no effort to ascertain how it disappeared, if it did so, or to recover it. He claims to have been drinking and dissipating heavily ever since the burning of his store occurred—a course of conduct hardly conducive to the restoration of alleged broken health. After his return to Redlands, he assigned to his brother his two remaining insurance policies, for which he received some time in January, $1,800, which, he says, he kept in a trunk at Redlands and spent in traveling about and in satisfying expenses of himself and wife. He is unable to detail, except in a single instance, any place they visited, or to name a single hotel at which they stopped.

A petition in bankruptcy was filed against him on March 6th. Ten days later adjudication was had. A trustee in bankruptcy was elected April 21st. He knew of the bankruptcy proceeding as early as April 16th, for on that day he aided his wife in proving a claim against his estate. He did not give his wife any part of the funds which he at any time received, or, while in California, do any thing toward earning a livelihood. All efforts in that direction were made by his wife, to whose ill health he mainly attributes his going to California. He denies having possession of any funds belonging to his estate on or after the date of the election of the trustee in bankruptcy; but, excepting about $200 expended on the wardrobe of himself and wife, wholly fails to account for his money other than as above stated.

[1] Defendant's main reliance for a reversal rests on the fact that the attorney who represented the petitioning creditors, the receiver appointed by the court, and the trustee in bankruptcy, aided, as a duly appointed special assistant United States district attorney in the prosecution of the case against him, taking an active part in the trial, although not as matter of fact (so far as shown) appearing before the grand jury. There is no claim that such assistant was paid for his services in this case otherwise than by the government, nor is his conduct upon the trial criticized. Under the law of Michigan, such counsel would have been disqualified from so acting. Howell's Mich. Stat. § 1158; Meister v. People, 31 Mich. 99; People v. Hurst, 41 Mich. 328, 1 N. W. 1027. The appointment, however, was made and the trial proceeded, not under the Michigan act, but under the federal statute, which imposes no such restriction. See Act of June 22, 1870, c. 150, 16 Stat. L. 162; Act of June 30, 1906, c. 3935, 34 Stat. L. 816; U. S. v. Rosenthal (C. C.) 121 Fed. 862, 872; U. S. v. Twining (D. C.) 132 Fed. 129, 132; Browne v. U. S., 145 Fed. 1, 4, 76 C. C. A. 31 (C. C. A. 2). A writ of certiorari was denied in the last-named case, 200 U. S. 618, 26 Sup. Ct. 755, 50 L. Ed. 623. The error assigned is without merit.

[2] There was ample evidence to carry the case to the jury. The verdict is irreconcilable with any theory other than the jury's disbelief of the defendant's evidence. Its rejection required his conviction. A critical analysis and a more extended statement of it would not be helpful either to the bench or the bar. Its inconsistencies and unsatisfac-

tory character are manifest and justify the conclusion reached by the jury.

The remaining 28 assignments go to either the introduction or the exclusion of evidence. We have carefully examined all ot them and find no error.

The judgment of the District Court is affirmed.