## DUPONT, respondent, *v.* McADOW, appellant.

JURY TRIAL — *Formation of jury — When special venire may issue.*— A party has a right under 12th Session Laws, 57, 58, to have a full panel from which to select a jury for the trial of his cause; and not until it is ascertained that a jury cannot be obtained from the panel thus provided can a special *venire* rightfully issue. If the full panel of twenty-four becomes depleted by reason of sickness or other cause during the term, it is the duty of the court to cause the same to be filled from the one hundred names selected by the commissioners. If a special *venire* is issued before the regular panel of twenty-four has become exhausted in the formation of a jury for a particular cause, or if a party is required to select a jury for such cause from a panel of less than twenty-four regular jurors, or if, the regular panel not being full, resort is had to an open special *venire* to complete the jury for the pending trial, the jury so formed is not such as a party is entitled to, and it is error to compel him to proceed to trial before such jury.

PROMISE TO MARRY — *Presumption arising from unlawful cohabitation.*— Where a man and woman have unlawfully cohabited together

for a long period, a statement by him to her that he would sell his property and thereafter he and she would seek some other country and spend their lives together, raises no presumption of a promise of marriage. The presumption, if any, would be that if they lived together, it would be in the same manner and upon the same terms as formerly. Whether any presumption would arise from such a state of facts is for the jury to determine, and not for the court.

BREACH OF PROMISE TO MARRY — *Measure of damages.*— In an action by a woman for breach of promise to marry, in determining the damages, where no special damages are alleged, the jury may take into view the money value or worldly advantages, separate from considerations of sentiment and affection, of the marriage, which would have given her a permanent home and an advantageous establishment; and if her affections were in fact implicated, and she had become attached to the defendant, the injury to her affections may be considered as an additional element of damages; otherwise, however, if the evidence fails to show that her affections have been wounded.

SAME — *Punitive damages, when allowed.*— Punitive or vindictive damages are not recoverable in such action, unless it is shown that the breach of the contract was wanton or malicious, or that the defendant unnecessarily wounded the feelings or injured the reputation of the plaintiff. Such damages are not recoverable unless the same are pleaded.

SAME — *Evidence of subsequent unlawful cohabitation — Continuance.*— In such action, evidence that the plaintiff, at the time of the commencement of the action, was living as the mistress of another man, is admissible in mitigation of damages. And where a continuance is asked, within a reasonable time after issue is joined, to enable the defendant to procure witnesses to prove such fact, a refusal to grant the continuance is error.

*Appeal from First District, Yellowstone County.*

THE opinion states the facts.

E. W. & J. K. TOOLE, WILLIAM WALLACE, Jr., and JOHN McGINNESS, for the appellant.

A. F. BURLEIGH and O. F. GODDARD, for the respondent.

WADE, C. J. This is an appeal from a judgment and from an order overruling a motion for a new trial. It appears that after the jury had been called and examined as to their competency, but before they had been sworn to

try the cause, the defendant interposed a challenge to the jury for the reasons: 1. That the jury had not been drawn and summoned according to law. 2. That at the time of selecting the jury for the trial, there was not a full and regular panel of twenty-four jurors, who had been duly drawn, selected and summoned as a regular panel for the term of court as trial jurors. 3. That the regular panel of jurors consisted at the time of only twenty-three persons, and the defendant did not have before him, from which to select a jury, a full and lawful panel, as is provided by law; and 4. That by reason of there not being a full and lawful panel at the beginning of the trial herein, the defendant was obliged to, and did, exercise his right of challenge as to persons who were called as jurymen in the said cause, who were not duly summoned according to law. The challenge was overruled; and the panel of twenty-three jurors having been exhausted before a jury for the trial of the cause was obtained, thereupon, in pursuance of an order of court, an open *venire* for twelve good and lawful men to serve as jurors in said cause was issued and duly returned, from which a trial jury was completed.

Exceptions were duly saved to the action of the court in overruling said challenge and in ordering a special *venire* to issue, and though the record does not contain the evidence upon which these exceptions are based, yet it seems to be conceded in the argument that at the time the cause was called for trial, there were but twenty-three jurors in the regular panel, and that a trial jury not having been completed therefrom, an open *venire* was issued, and twelve men summoned from which a jury for the trial of the cause was completed.

Our statute upon this subject is very plain and explicit. The county commissioners are required to select the names of one hundred persons lawfully qualified to serve as jurors, from the county assessors' books, and from the names so selected, to draw the names of thirty persons, who shall be summoned as trial jurors; and at the commencement of

any term of the district court, the judge is required to examine the jurors who appear, and to discharge by lot the number in excess of twenty-four. If, for any reason, the panel of twenty-four jurors is not full at the opening of the court, or at any time during the term, the clerk, under the direction of the court, is required to draw from the one hundred names so selected by the commissioners additional names to fill the panel. Laws 12th Sess. 57, 58.

It is the right of a party to have a full panel from which to select a jury for the trial of his cause. It is his right to have this panel selected by the commissioners from the tax payers of the county, and not until it is ascertained that a jury cannot be obtained from the panel thus provided can a special *venire* rightfully issue. If the full panel of twenty-four becomes depleted, by reason of sickness or other cause during the term, it is the duty of the court to cause the same to be filled from the one hundred names selected by the commissioners. The panel being full, and having become exhausted by reason of challenges for cause or peremptory challenges, during the formation of a jury for the trial of any particular cause, then, and not until then, may an open *venire* issue to complete the jury for that cause. The issuing of a special *venire* in a particular cause raises no presumption that the one hundred names selected by the commissioners have become exhausted. If a special *venire* is issued before the regular panel of twenty-four has become exhausted in the formation of a jury for any particular cause, or if a party is required to select a jury for such cause from a panel of less than twenty-four regular jurors, or if, the regular panel not being full, resort is had to an open special *venire* to complete the jury for the pending trial, then the jury so formed is not such a jury as a party is entitled to, or that is authorized by law. It is not every twelve men that can be found that form a lawful jury. They must be men selected from the proper place, and drawn and summoned according to law. A requisite number of persons having the qualifications of jurors will not

constitute a jury, or panel of jurors, unless they are drawn and summoned as jurors in conformity with law. *Lincoln* v. *Storrelo,* 73 Ill. 246. A panel of jurors not drawn according to law is a nullity. *Clinton* v. *Englebrecht,* 13 Wall. 441.

It is the right of a party at the commencement of a trial to have a full panel of twenty-four jurors from which to select a trial jury. *Kennon* v. *Gilmer,* 4 Mont. 450.

It was error, therefore, to have compelled the defendant and appellant to select a jury from a panel of less than twenty-four regular jurors, and was error to have issued an open *venire* to complete a jury partly formed from a panel of less than twenty-four jurors.

This was an action to recover damages for a breach of promise of marriage. It is alleged in the complaint, and also in the answer, that the respondent contracted to live with the appellant as his mistress at the rate of $25 per month; and that she did so live with him at the city of Bozeman, Montana, for the period of more than one year; and that subsequently the same relation was resumed and continued in the state of California for about the same period.

At the trial the court, among other things, instructed the jury as follows:

" If, from the evidence, the jury should find that defendant made repeated statements to the plaintiff that he would dispose of his property in Montana and take her to some mutually satisfactory country, there to spend their lives together, the presumption would be that he intended to live with her in a lawful manner, and from such declarations, taken with declarations of attachment and affection, the jury can infer a promise of marriage."

Confronted by the admissions of both these parties that they had lived and cohabited together for years in an unlawful manner, we do not think that any presumption whatever arises that if they should live together again it would be in a lawful manner.

This instruction authorizes the jury to infer a promise of marriage from the admitted fact of unlawful cohabitation and statements by the appellant that he would sell his property in Montana and thereafter he and the respondent would spend their lives together. No promise of marriage could properly be inferred from any such state of things. Unlawful cohabitation having been carried on for a long time between these parties, the presumption would be that if they lived together again, it would be in the same manner and upon the same terms. A condition of things once having been proved to exist is presumed to continue. We think the fact that a man has lived with a woman as his mistress raises a very strong presumption that he does not intend to marry her at all. And, as in this case, where the woman has lived with the man as his mistress with her consent, and under a contract for so much wages by the month for the services rendered, and this has been continued for years, and there is a subsequent promise on the part of the man to live with the woman again, no presumption whatever would arise that he intended to live with her as his wife. If any inference could be indulged, it would be just the contrary. This instruction authorized the jury to infer a promise of marriage, the very thing at issue between the parties, from a state of facts that conclusively repelled any such inference. Such an instruction would authorize a verdict for a plaintiff in an action for a breach of promise of marriage, in the absence of any direct proof of such promise, and upon a state of facts, as in this case, that would render such a promise entirely out of the ordinary course of things, if not impossible.

In any event, what might be inferred from such a state of facts is for the jury, and not for the court, and any statements or declarations made must be interpreted in the light of all the circumstances and conditions surrounding the parties at the time the statements are made, which interpretation and the effect to be given to such testimony is for the jury.

The court further instructed the jury as follows: "In an action for a breach of promise of marriage, damages cannot be measured by a known standard, as in commercial cases, but the amount is peculiarly a question for the jury. The law allows punitive or vindictive damages to be assessed by the jury, and all the circumstances attending the breach before, at the time, and after, may be given in evidence in aggravation of damages. In this kind of action, if the jury find for the plaintiff, they should take into consideration what would have been her condition pecuniarily had the contract been consummated, as a circumstance in estimating her damages. From the nature of the case it is impossible to fix the amount of compensation by any precise rule. It is a question for the sound discretion of the jury in each particular instance."

There are no special damages alleged in this complaint. There are no allegations that the defendant entered into the contract and broke it wantonly, maliciously, or wickedly, or that that he did anything to unnecessarily wound the feelings, to injure the reputation, or to destroy the future prospects of the plaintiff. It is only when these elements enter into the case that punitive or vindictive damages are allowed. They are allowed as a punishment for the fraud or malice of the defendant, rather than as compensation to the plaintiff. Suth. on Dam. 316–328.

In determining the damages for loss of marriage, where no special damages are alleged, the jury may take into view the money value or worldly advantages, separate from considerations of sentiment and affection, of the marriage, which would have given her a permanent home and an advantageous establishment; and if her affections were in fact implicated, and she had become attached to the defendant, the injury to her affections may be considered as an additional element of damage. Id. 323.

The record does not show that the plaintiff's affections were in any way implicated in this matter. She lived and cohabited with the defendant as his mistress for money, at

so much per month, and the evidence fails to show that her
affections have been wounded in the least degree by his
failure to marry her, so that injury to the affections could
not properly have been considered by the jury in estimat-
ing the damages.    Damages should be only commensurate
with the injury.

The following instruction, given in a case similar to the
one we are considering, and approved by the supreme court
of Massachusetts in 1866, as expressing the rule of damages
with fullness and accuracy, and the elements upon which
they are based, is also approved by us as stating the true
rule of damages in cases of this kind, where there is no al-
legation or proof of fraud or malice on the part of the
defendant:

" That if the jury found that the defendant had broken
his contract, and not acted in good faith towards the plaint-
iff, she was entitled to receive damages, to be computed on
the principle of indemnity and reasonable compensation,
and not in any event as vindictive damages; that in the
position of the evidence, and as one element of damages,
in that event, they would have a right to consider the dis-
appointment of her reasonable expectations, and to inquire
what she had lost by such disappointment, and for that pur-
pose to consider, among other things, what would be the
money value or worldly advantages (separate from consid-
erations of sentiment and affection) of a marriage which
would have given her a permanent home and an advantage-
ous establishment; that they were also to satisfy themselves
whether her affections were in fact implicated, and whether
she had become attached to the defendant, and if such were
the fact, the wound and injury to her affections were to be
considered as another and additional element in the com-
putation of her damages; and also that they would have a
right to take into consideration generally, in computing her
damages, whatever mortification and pain or distress of
mind she suffered, resulting from a refusal by the defend-
ant to fulfill his promise." *Harrison* v. *Swift*, 13 Allen, 145.

In a case like this one, where there is no fraud or malice alleged; where there is no averment or proof of the motives that actuated the defendant; where there are no circumstances in aggravation of damages; and nothing at all to show that he entered into the contract and broke it with bad motives, or a wicked heart, we cannot understand how an instruction to the jury became applicable or proper which informed them "that all the circumstances attending the breach, before, at the time, and after, may be given in evidence in aggravation of damages."

There was no evidence in the case to justify such an instruction. The instructions to the jury must be applicable to and authorized by the evidence. There is no evidence in the record showing or tending to show anything in aggravation of damages. The complaint alleges a promise of marriage by the defendant and his failure to perform. The answer is a specific denial. All the proof in the case was directed to this plain, direct issue.

Mr. Sedgwick says (Meas. Dam. 423): "No evidence can be given of any fact having a tendency to aggravate the damages which has occurred after the commencement of the suit." This rule was followed in the introduction of the evidence. There was no testimony in aggravation of damages, but there was an instruction in aggravation of damages.

Defendant's motion for a continuance was overruled, and this is also assigned as error. The term of court began on the 25th of May; the answer was filed on the 29th of May, and the replication on the 1st day of June. The motion for continuance was filed June 11th. The affidavit in support of the motion, among other things, sets forth that one Dora Rosarins, who resides at Los Angeles, in the state of California, would testify that the plaintiff and one Roman were living and cohabiting together at Los Angeles immediately prior to and at the time of the commencement of this action, and that the defendant, at the time of making said affidavit, had just informed his attorneys of said fact. This testimony was material. If for no other purpose, it

would have been competent in mitigation of damages, even under the general issue, and that, in legal effect, was the state of these pleadings. A woman bringing an action for a breach of promise of marriage against one man, while at the same time unlawfully living and cohabiting with another, would not be entitled to the same damages as if she were a virtuous woman, leading a pure and unspotted life. Damages for the blasted hopes and the ruined life of a pure, virtuous woman might be immeasurably large, and beyond any compensation, while to an habitual mistress, whose life and hopes were already ruined, the damages might be immeasurably small.

These pleadings were made up and the issues framed after the term of court had commenced. Neither party is called on to prepare for trial until after the issues are formed. Not until that time is there anything to try. Causes cannot properly be set for trial until they are at issue. After the issues are formed, the parties ought to have a reasonable time in which to bring in their witnesses, take depositions, and prepare for trial. Here the issue for trial was formed during a term of court, and it was then found that a material witness for the defendant was in the state of California, and we have been unable to discover any good reason why the defendant should not have been given an opportunity to have taken the deposition of such witness. Opportunity ought to have been given, unless the plaintiff was at the time ready and willing to admit that the absent witness, if present, would have testified as set forth in the affidavit for continuance. Granting or refusing motions for continuance rests very much in the sound discretion of the court. But in cases where a party has used due diligence, and there has been no neglect, and a continuance would secure the production of the absent testimony, and the same is competent and material, it would be an abuse of discretion to overrule the motion for continuance.

The judgment is reversed and the cause remanded for a new trial.                              *Judgment reversed.*