STATE OF MONTANA EX REL. REX F. HENNINGSEN, S. O. MEYER AND KENDRICK SMITH, RELATORS, v. DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF SILVER BOW, AND THE HONORABLE JOHN B. McCLERNAN. ONE OF THE JUDGES THEREOF, RESPONDENTS.

No. 10094.
Submitted October 14, 1959.   Decided October 15, 1959.
348 Pac. (2d) 143.

See **C. J. S.** Prohibition § 7.

Rex F. Henningsen, S. O. Meyer, Kendrick Smith, Butte, for relators. Rex F. Henningsen argued orally.

Maurice F. Hennessey, County Attorney, Robert J. Holland, Butte, for respondents. Maurice F. Hennessey, County Attorney, argued orally.

## OPINION OF THE COURT

This is an original proceeding. Petitioners seek a writ of prohibition from this court directed to the Honorable John B. McClernan, Judge of the District Court of the Second Judicial District in and for the County of Silver Bow, to prohibit the said judge from calling civil and criminal cases now pending

or to be pending to be tried before a jury venire, panel or array, drawn otherwise than in accordance with the statutes of Montana.

The facts giving rise to the challenge to the jury venire by relators, who are members of the Bar, and giving rise to this proceeding are as follows:

On October 8, 1959, the Honorable John B. McClernan proceeded to draw a jury venire from jury Box No. 1 in which there had been inserted approximately 30,000 numbers enclosed in separate black capsules and approximately 15,000 numbered slips of unfolded paper measuring approximately $1\frac{3}{4}$ inches by 7/16 inch which said numbered slips of paper were not contained or enclosed in capsules, containers or otherwise concealed.

In drawing the jurors' numbers from jury Box No. 1 the judge drew one unfolded slip of paper which was not contained or enclosed in a capsule, container or otherwise concealed or one number enclosed in a separate black capsule, the drawing being made one number at a time; that of the 100 numbers drawn representing the proposed jury venire, approximately 58 of the numbers were enclosed in separate black capsules and approximately 42 of the numbers were upon the unfolded slips of paper.

On the following day, the relators filed in the District Court a petition and motion to challenge and quash the jury venire, directed to the district judge, and, on the same day it was presented to the judge in open court who thereupon denied the petition and motion, and then announced that the list of proposed jurors would be delivered to the sheriff of Silver Bow County on the morning of October 14 for service and the trial term of court to commence October 21.

On October 13, the relators filed their petition for a writ of prohibition with this court. The parties, procedure, and timeliness of the proceedings are unquestioned.

Relators' petition, after setting forth the facts as above, con-

tended that the jury venire was not drawn in accordance with the method prescribed by chapter 168 of the 1957 Montana Session Laws by reason of the fact that the numbers of each of the jurors were not enclosed in separate black capsules identical in all respects, as required by law.

It is also unquestioned that there were more than 40 civil cases and 7 criminal cases to be tried in the District Court and that the validity of any verdict or judgment entered in any given cause could be subject to question on appeal or by original proceedings before this court. It seems clear then that there is no question of the appropriateness of the remedy sought in this original proceeding.

Upon the petition, an alternative writ of prohibition was issued, directed to the District Court, return to which was filed and the matter argued on October 14.

The return admitted deviation in the selection of jurors from the statutory procedure. It gave as a reason therefor the statutory requirement of at least one jury term per year, which has not been had in this department of the District Court in this calendar year. It also alleged inability to secure the capsules required by the statute in sufficient number in time for the annual jury term and expense of same. The return also alleged that no unfairness in the selection of the jurors was had and that the use of some 15,000 paper slips mixed with 30,000 statutory capsules was a substantial compliance with the statute.

There is involved here not even a suggestion of fraud, disenfranchisement of citizens to act as jurors, or any personal reproachable conduct. The condition which brought about the situation now existing was the discovery by the District Court of a clerical error in listing prospective jurors by the jury commission which resulted in the necessity of including approximately 15,000 additional names to said jury list and addition of the same amount of numbers in jury Box No. 1.

The question now before us is not as to whether any prejudice has or may result in an individual case, but simply whether

the letter of the law need be followed by the district judge to protect the system of jury selection. It is clear, however, that multitudinous appeals or challenges to the jury panel are likely to arise and cause burdensome litigation in the court with consequent increased costs to taxpayers. The proceeding being timely, this court has the responsibility to set the question at rest.

The portions of chapter 168 of the 1957 Montana Session Laws applicable here are section 93-1404, R.C.M. 1947, as amended, which provides:

"Duty of clerk—jury boxes. The clerk shall prepare and keep a jury box and contents as follows: The number of each juror shall be written, typed or stamped on paper or other suitable material, and enclosed in separate black capsules, identical in all respects ,and placed in a box of ample size to permit said capsules to be thoroughly mixed, and which said box shall be kept for that purpose and shall be known as, and plainly marked, 'jury box No. 1.' Said capsules may be used as often as necessary; provided, however, no capsule shall be used which is in any manner whatsoever defaced or disfigured, or so marked that it may be recognized or distinguished from the other capsules in said jury box No. 1. There shall be so enclosed in said box one number, and only one number, corresponding to the name of each juror on the jury list." And section 93-1503, R.C.M. 1947, as amended, which provides:

"Drawing—how conducted. 1. The clerk must place said box on a rod so that the same may readily revolve and said box must be revolved a sufficient number of times so as to insure that the capsules in said box shall become thoroughly mixed, and thereafter the judge must draw from said box one at a time, as many of said capusles containing the numbers of jurors as are ordered by the court.

"2. A minute of the drawing shall be entered in the minutes of the court, which must show the names of the jurors corresponding to the numbers so drawn from said jury box.

"3. If the name of any person so drawn is deceased or insane, or who may have permanently removed from the county, and the fact shall be made to appear to the satisfaction of the court, the name of such person shall be omitted from the list, and another juror drawn in his place, and the fact shall be entered upon the minutes of the court. The same proceeding shall be had as often as may be necessary, until the number of jurors required shall have been drawn. After the drawing shall have been completed, the clerk shall make a copy of the list of names of the persons so drawn, and certify the same. In his certificate he shall state the date of the order and of the drawing, and the number of the jurors drawn, and the time when and the place where such jurors shall be required to appear. Such certificate and list shall be delivered to the sheriff for service."

The above statutes so far as they apply to the facts herein are clear, explicit and easy to comply with. We are not impressed by the reason given that capsules in sufficient number may be either expensive or difficult to obtain. As has been historically said, the difficult can be done immediately, the impossible takes a little longer. Although the desire of the district judge to get his jury term in progress is commendable, he still cannot disregard the plain provisions of the legislative directive, enacted to protect the jury system. We note, also, that affidavits by relators indicate that capsules are available at a reasonable cost within a reasonable time and that, truly, compliance with the statute is neither unreasonable nor impossible.

In State v. Porter, 125 Mont. 503, 506, 242 Pac. (2d) 984, 985, this court stated:

"In State v. Hay, 120 Mont. 573, 194 Pac. (2d) 232, 235, this court reaffirmed the principle laid down by the Montana territorial Supreme Court that a 'defendant has a right to an impartial jury' selected from the proper place and drawn and summoned according to law. Dupont v. McAdow, 6 Mont. 226, 229, 9 Pac. 925, 926. Repeatedly this court has required the

trial court to substantially comply with the statutes in procuring a jury. Any material deviation or departure is a denial of fundamental constitutional rights. State v. Groom, 49 Mont. 354, 359, 141 Pac. 858; State v. Tighe, 27 Mont. 327, 71 Pac. 3.

" 'The right to a trial by jury is an undisputed right, and in order that this right may be preserved to parties interested, it is a self-evident proposition that the law of their procurement must be observed. This form of trial is by the county, and those serving must be selected from the duly qualified citizens of the county.' Kennon v. Gilmer, 4 Mont. 433, 455, 2 Pac. 21, 24.

"In order to carry out the constitutional guarantee that the accused in a criminal prosecution shall have a right to 'a speedy public trial by an impartial jury of the county' (Const. of Montana, Art. III, section 16), the Legislature has provided that the names of all eligible jurors of the county be placed in jury box No. 1. R.C.M. 1947, section 93-1404. It is from the names in this jury box that the trial jury is drawn and summoned. R.C.M. 1947, section 93-1502." See also State v. Landry, 29 Mont. 218, 74 Pac. 418.

It is not the right of the individual necessarily involved, but rather the entire jury system and the selection procedures which must be protected, and when a showing is timely brought before this court we would be remiss in our duties if we permitted material deviation or departure from the procedures spelled out by the legislature.

The alternative writ of prohibition heretofore issued on October 13 is hereby made permanent. The relators, being officers of this court and representing clients in civil causes presently pending for trial in the District Court of the second judicial district, and the judge of said court having acted in good faith, costs herein shall not be allowed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE CASTLES and ADAIR concur.

MR. JUSTICE ANGSTMAN dissenting:

I concede that this court should hesitate to sanction departure in a material manner from the statutory method of drawing a jury. The danger lies in the fact that if departure be tolerated in one respect then there is invitation to deviate in others and thus the statutory method be frittered away.

I think though that under the circumstances here involved we should uphold the method used by the trial judge. He informs us under oath that the reason for this departure was as follows:

"That the respondents and each of them attempted to acquire the added 15,000 capsules which would be identical with the 30,000 capsules which the respondents had and which would be necessary to obtain strict compliance with the hereinbefore cited statute and were unable to do so.

"That the respondents are informed and believe and therefore allege that it is impossible for them to obtain the necessary forty-five to fifty thousand identical black capsules and to prepare them for drawing in sufficient time for the court to have a jury term in the year 1959."

There was no suggestion as stated in the majority opinion that strict compliance was departed from because of expense of the capsules.

As I see it some provisions of our statute, with respect to drawing juries, are directory merely. Thus it seems to me that if white capsules were used instead of black ones no one could complain and yet there would be a departure from the statutory method.

I do not believe that any party to either the civil or criminal cases about to be tried before the jury as it has been drawn would have any basis for complaint. As to them there would have been no prejudice.

It is merely a technical departure rom the letter o the statute which could not be said to affect any substantial right of a litigant since it no way affected the obtaining of a fair and impartial jury.

MR. JUSTICE BOTTOMLY:

I agree with the foregoing opinion of Mr. Justice Angstman.