No. 81-217

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

ROBER W. DVORAK and PATRICIA J. DVORAK,

Plaintiffs and Respondents and
Cross-Appellants,

vs.

HUNTLEY PROJECT IRRIGATION DISTRICT,
JOHN PROPP and NORMAN MAYNARD,

Defendants and Appellants.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellants:

Harwood, Galles & Gunderson, Billings, Montana
Anderson, Brown, Gerbase, Cebull & Jones, Billings,
Montana
Rockwood Brown argued, Billings, Montana

For Respondents:

Keefer, Roybal, Hanson, Stacey and Jarussi, Billings,
Montana
Calvin J. Stacey argued, Billings, Montana

---

Submitted: October 26, 1981

Decided: DEC 2 3 1981

Filed: DEC 2 3 1981

Thomas J. Kearney
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

In an action for damages against an irrigation district and two of its employees for refusal to provide irrigation water to plaintiffs' farm, the District Court awarded plaintiffs compensatory and punitive damages in conformity with a jury verdict. In a post-trial order, the District Court vacated the award of punitive damages against the irrigation district and denied a new trial. We reverse and remand for a new trial.

On April 23, 1976, plaintiffs Roger and Ann Dvorak filed a damage action in the District Court of Yellowstone County against defendants Huntley Project Irrigation District and two of its employees, Norman Maynard, its manager, and John Propp, a ditch rider. Plaintiffs sought actual damages for their crop losses in 1974 and 1975 and punitive damages of $50,000 against each of these defendants. The defendants cross-claimed for punitive damages against plaintiff Roger Dvorak.

On November 7, 1980, the jury returned a verdict for plaintiffs in the amount of $5,000 compensatory damages and $40,000 punitive damages against each of the three defendants. The jury denied defendants' cross-claim against plaintiff Roger Dvorak for punitive damages.

Thereafter, defendants moved for a new trial. The District Court struck the award of punitive damages against defendant Huntley Project Irrigation District and denied a new trial.

Defendants appeal from denial of their motion for a new trial and plaintiffs cross-appeal from that part of the District Court's order striking the $40,000 punitive damages award against defendant Huntley Project Irrigation District.

We restate the issues raised on appeal or cross-appeal in this manner:

1. Did the manner of drawing the preselected jury list for this trial violate sections 25-7-202 and 25-7-204, MCA,

- 2 -

thereby denying appellants' right to a trial before a jury selected in the manner provided by law?

2. Were employees Maynard and Propp exempt or immune from a punitive damage judgment against them?

3. Did the District Court err in striking the punitive damage award against Huntley Project Irrigation District?

The parties' sub-issues will be discussed under the principal issues set forth above to the extent necessary for determination of this appeal.

The Irrigation District contends that the manner in which the jury was selected violated the applicable Montana statutes. The statutes in question are as follows:

> "25-7-202. Judge to draw capsules containing ballots. When an issue of fact to be tried by a jury is brought to trial, the district judge in the presence of the clerk of the court must openly draw out of the trial juror box as many of the capsules containing ballots with the names of jurors thereon, one after another, as are sufficient to form a jury."
>
> " . . .
>
> "25-7-204. Mode of drawing capsules. Before the first capsule containing a ballot shall have been drawn, the box must be closed and well shaken so as to thoroughly mix the capsules therein. The district judge must draw a capsule containing a ballot with the juror's name thereon through an aperture made in the lid large enough only to admit his hand conveniently and without said judge gazing into said box before or while drawing said capsule."

The statutory procedures set out above were not followed in this case. Instead, a deputy clerk of court removed paper slips, not in capsules, from a metal box. The deputy clerk did not shake the box before the names were drawn. The names drawn by the deputy clerk were placed on a list that was not drawn by lot prior to the impaneling of the trial jury. Finally, the most important departure from the statutory procedure took place when the deputy clerk drew the prospective jurors' names from the metal box outside the presence of the district judge.

This procedure violated the fundamental purpose of these

statutes, viz. to insure random selection of trial jurors by lot from the entire panel or array. The statutory requirement of encapsulating the ballots containing the jurors' names and thoroughly shaking the box before drawing is the statutory method for achieving random selection. The statutory requirement that the district judge draw the names of the jurors in the presence of the clerk of court is to insure that the statutory procedures are followed. The statutory violations here defeated the objective of insuring random selection.

In State v. District Court County of Silver Bow (1959), 136 Mont. 354, 348 P.2d 143, this Court discussed the importance of following the jury selection statutes and held,

"It is not the right of the individual necessarily involved, but rather the entire jury system and the selection procedures which must be protected, and when a showing is timely brought before this court we would be remiss in our duties if we permitted material deviation or departure from the procedures spelled out by the legislature." 348 P.2d at 146.

This Court reaffirmed the requirement that the District Court follow the statutory mandate of jury selection in State v. Fitzpatrick (1977), 174 Mont. 174, 569 P.2d 383, when we stated:

" . . . Specifically, all duties delegated to the jury commission and district court judge were performed by the clerk of court without any apparent overseeing. While we have no cause to question the good faith of the public officers involved, it is obvious the statutory scheme for selecting and drawing a jury was completely circumvented. The rule in Montana is that juries must be selected and drawn in substantial compliance with the law. Where the disregard for legislative mandates amounts to more than technical irregularity substantial compliance has not been achieved." 569 P.2d at 389.

Respondents contend that the jury selection process used by the District Court in this case was typical of that court. Therefore, respondents contend that counsel for the District should have known the procedure and objected to the jury selection process immediately and he should not have waited until a week after the verdict had been entered to make his objection

known.

The basic flaw in this contention is that counsel for the Irrigation District did not discover the discrepancies in the jury selection process until a week after the trial. Further, counsel had no reason, prior to his inquiries, to suspect that the statutory procedures were not being followed. In other words, the "means of knowledge" were not available for counsel to object before or during the trial.

In Ledger v. McKenzie (1938), 107 Mont. 335, 85 P.2d 352, this Court discussed the necessity of objecting to the impaneling of a jury in a timely manner. This Court held:

> " . . . that if counsel does not have the knowledge, or means of knowledge, of the irregularity in the drawing of the jury, or the panel from which it is selected until after the verdict, the question may be raised for the first time on motion for new trial." 85 P.2d 353.

In this case, counsel had a right to rely on the judge and clerk to follow their statutory duties. The fact that no actual prejudice has been shown is irrelevant. Whether a different verdict would have resulted had the statutory procedures been followed is purely speculative, conjectural and impossible to determine. The District Court went well beyond a mere technical departure from the jury selection statutes and this type of departure necessitates the reversal of the verdict and a retrial with a jury selected in the proper manner.

To assist the District Court on retrial, we will determine two other issues raised in this appeal.

The second issue presented by the District is whether defendants Propp and Maynard are exempt and immune from the exemplary and punitive damages awarded against them. The Irrigation District contends that because of sections 2-9-104 and 2-9-105, MCA, Maynard and Propp are not liable for the $40,000 exemplary award.

Sections 2-9-104 and -105, MCA, do not apply to individual

- 5 -

defendants but to the state and governmental entities. The section of Chapter 9 that applies to individual defendants is section 2-9-305, MCA, which provides:

> "Governmental entity to be joined as defendant-- immunization and indemnification of employees. (1) It is the purpose of this section to provide for the immunization and indemnification of public officers and employees sued for their actions other than intentional tort or felonious acts, taken within the course and scope of their employment.
>
> "(2) In an action brought against any employee of a state, county, city, town, or other governmental entity for a negligent act, error, or omission or other actionable conduct of the employee committed while acting within the course and scope of his office or employment, the governmental entity employer shall be made a party defendant to the action.
>
> "(3) Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter shall constitute a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, or omission or other actionable conduct gave rise to the claim. In any such action against a governmental entity, the employee whose conduct gave rise to the suit shall be immune from suit by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of such employees' employment, unless the claim is based upon an intentional tort or felonious act of the employee.
>
> "(4) In any action in which a governmental entity employee is a party defendant, the employee shall be indemnified by the governmental entity employer for any money judgments or legal expenses to which he may be subject as a result of the suit unless the conduct upon which the claim is brought did not arise out of the course and scope of his employment or is an intentional tort or felonious act of the employee." (Emphasis added.)

Under this section, individual defendants are immune from being sued for their actions unless their act is intentional or felonious. Section 2-9-305(1), MCA. The Irrigation District contends that this Court cannot speculate as to whether the jury, in their verdict, had found Propp and Maynard to have committed an intentional tort.

The original action was based upon the violation of section 85-7-1911(1), MCA, which states in pertinent part:

"The board of commissioners shall apportion the water for irrigation among the lands in the district in a just and equitable manner . . . ."

The jury found that the District had violated this section and that Propp and Maynard by their individual acts had also violated this section. There was a clear violation of a statutory duty when the District, through the acts of Propp and Maynard, failed to provide water to the Dvoraks. The "act" of failing to provide water in this case was arguably an intentional act and as such it would justify an award of punitive damages. Section 27-X-221, MCA.

The Irrigation District contends that no showing of actual malice was made and therefore the punitive damage award against Propp and Maynard cannot stand. In First Sec. Bank of Bozeman v. Goddard (1979), _____ Mont._____ , 593 P.2d 1040, 1048-1049, 36 St.Rep. 854, 864-865, this Court held:

"It is not necessary to show actual malice to recover punitive damages. ~~Harrington~~ v. Holiday Harrington Rambler Corporation (1978), _____ Mont._____ , 575 P.2d 578, 35 St.Rep. 46. Fraud or malice may be actual or presumed. Section 17-208, R.C.M. 1947, now section 27-1-221, MCA. Implied malice may be shown by proof that defendant engaged in a course of conduct knowing it to be harmful and unlawful. Ferguson v. Town Pump, Inc. v. Wallace Diteman (1978), _____ Mont._____ , 580 P.2d 915, 921, 35 St.Rep. 824, 831; Miller v. Fox (1977), _____ Mont._____ , 571 P.2d 804, 34 St.Rep. 1367; Cashin v. Northern Pacific Railway Company (1934), 96 Mont. 92, 28 P.2d 862.

"'Malice-in-law' is implied where the defendant's conduct is unjustifiable."

Here, Propp and Maynard's conduct was arguably unjustifiable in that they intentionally failed to provide water to the Dvoraks' farm. Their actions, if believed by the jury, are sufficient to constitute a violation subjecting them to liability for punitive damages.

The Dvoraks have cross-appealed, alleging that the District Court committed error by striking the punitive damage

- 7 -

award against the District. They present several contentions but we need only to discuss whether Montana law provided for governmental immunity at the time this action arose.

This action arose in and is limited to the summer of 1974, a fact that was stipulated to by both parties. The 1972 Montana Constitution provides in Section 18, Article II:

> "Section 18. State subject to suit. The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature."

The legislature did not provide immunity for certain state and governmental entities until it enacted sections 2-9-104 and 2-9-105, MCA, in 1977. These statutes do not apply to this action and cannot be applied retroactively. Section 1-2-109, MCA provides:

> "When laws retroactive. No law contained in any of the statutes of Montana is retroactive unless expressly so declared."

The District Court erred by striking the award of punitive damages against the Huntley Project Irrigation District. Reversed and remanded for a new trial.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent.

The majority holds that the manner in which the jury was selected violated sections 25-7-202 and 25-7-204, MCA, and thereby abridged the District's fundamental rights to a fair and impartial jury. The majority relies upon State v. District Court, County of Silver Bow (1959), 136 Mont. 354, 348 P.2d 143; Ledger v. MacKenzie (1938), 107 Mont. 335, 85 P.2d 352; and State v. Fitzpatrick (1977), 174 Mont. 174, 569 P.2d 383. While each of these cases does in fact discuss the necessity for a District Court to follow the statutory procedures when selecting a jury, there are some important distinctions between the facts in the present case and those in the cases relied upon by the majority.

In State v. District Court, County of Silver Bow, supra, the trial judge failed to follow the statutory procedures for selecting a jury venire when he drew slips of paper, which were numbered and represented prospective jurors, from the jury box. The slips of paper were not enclosed in separate black capsules. The failure to follow this statutory procedure was challenged by counsel on the very next day, before any jury was actually impaneled. This Court held:

> "It is not the right of the individual necessarily involved, but rather the entire jury system and the selection procedures which must be protected, <u>and when a showing is timely brought before this Court</u> we would be remiss in our duties if we permitted material deviation or departure from the procedures spelled out by the legislature." (Emphasis added.) 348 P.2d at 146.

The general rule as set out in 50 C.J.S. Juries, §175 at 903, emphasizes the timeliness of an objection by

stating, "Objections because of irregularities in drawing or summoning the jury should be made before the jury is impaneled and sworn, and if not so made ordinarily are not available after verdict on a motion in arrest or for a new trial." See, State v. Steen, (1916), 29 Id. 337, 158 P. 499. In this case no objection was made by counsel until one week after the verdict had been entered. This delayed objection cannot be considered timely, and it begs the question as to whether counsel would have objected had the verdict gone the other way.

The District contends, and the majority agrees, that counsel did not discover the improper method of impaneling the jury until a week after the trial. They cite Ledger v. MacKenzie, supra, to support their argument that irregularities in selection of a jury panel can be objected to after a verdict has been entered. This is a misinterpretation of the holding Ledger.

Ledger states the general rule that a party who fails to challenge or object waives an irregularity in the impaneling of a jury. 85 P.2d at 352. This Court, when discussing the "knowledge" necessary for a timely objection held:

> "Counsel had the means of knowledge, and while it may be true that the fact and manner of the drawing were not brought home to them personally, nevertheless such means of knowledge were at their command, and therefore, these cases do not come within the rule of the Missouri court." 85 P.2d at 353.

Here, counsel also had the "means of knowledge," for he merely had to ask, at anytime, how the jury was impaneled. It is hard to imagine that, if counsel felt that the jury was not impartial at the time of trial, he would wait until

-10-

a week after the verdict before objecting to the impaneling.

State v. Fitzpatrick, supra, was not a reversal that was based upon the questionable nature of the jury selection procedure. It was a reminder to the Thirteenth Judicial District that it shall use and comply with the jury selection statutes. This Court said, "[w]e stated initially that this matter was not properly raised on appeal, but it is of sufficient import to warrant a full discusion for future guidance." 569 P.2d at 389.

Here, as in Fitzpatrick, the selection of jurors was not in total compliance with sections 25-7-202 and 25-7-204, MCA. However, the objection to the procedure was not timely and, therefore, should not be the basis of a reversal. Further, there has been no indication the jury hearing the case was anything but fair and impartial.

_____
Justice

-11-