No. 81-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DOUGLAS D. SOLBERG, as Personal Representative
of the Estate of Darrel B. Solberg, Deceased,

Plaintiff and Appellant,

vs.

COUNTY OF YELLOWSTONE, MONTANA, and SIDNEY J.
HAYES, JR., M.D.,

Defendants and Respondents.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Sandall & Cavan, Billings, Montana

For Respondents:

Anderson, Brown, Gerbase, Cebull & Jones, Billings,
Montana

---

MAR 1 1983

Submitted on briefs: September 9, 1982

Decided: March 1, 1983

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is a wrongful death action on appeal from the District Court of the Thirteenth Judicial District in and for the County of Yellowstone. The jury found for the defendant, Yellowstone County. From that adverse verdict and judgment, the plaintiff appeals.

Solberg had been incarcerated in the Yellowstone County jail since mid-day on November 19. On that day he was involved in a single-car accident. His car left the road, went through a fence, and came to rest in a field. Solberg was in the car when the deputy sheriff arrived. According to the deputy, Solberg was "quite intoxicated" and "he could barely walk." He was then taken to jail and charged with driving while intoxicated and driving without a valid driver's license. On the following day, November 20, 1974, he pled guilty to the two offenses in justice court. He was unable to pay the fine imposed and as a result he was ordered to serve time in jail.

On November 22, 1974, at approximately 7:30 a.m., Darrel Solberg was found lying face down on the floor of a padded cell in the Yellowstone County jail. He was immediately rushed to the hospital and was pronounced dead on arrival. At the emergency room his temperature was recorded at 107.8 degrees. Later that morning an autopsy was performed. The cause of death was determined to be hyperpyrexia, the greatly elevated temperature related to delirium tremens and alcohol withdrawal. The complaint alleged that the defendant, Yellowstone County, "negligently and carelessly failed to promptly secure, or demand, adequate and proper medical attention. . ." The jury held for the defendant. The plaintiff then brought this appeal.

Several issues were raised on appeal:

1. whether the jury was selected in accordance with the law;

2. whether or not the District Court erred in refusing to give an offered instruction on negligence as a matter of law; and

3. whether or not there is substantial evidence to support the verdict?

The first issue relating to the selection of the jury necessitates a reversal and remand for new trial; however, we will consider the other issues in view of the fact the case must be retried.

The trial in this cause took place during October 1980. During that same time period, within weeks of the Solberg trial, another trial was held in the Thirteenth Judicial District. The other case was entitled Dvorak v. Huntley Project Irrigation District. In that case a jury rendered a verdict which was appealed to this Court. We reversed, because the jury had not been selected in accordance with law. Dvorak v. Huntley Project Irrigation District (1981), _____ Mont. ___ , 639 P.2d 62, 38 St.Rep. 2176. Specifically, we found violations of sections 25-7-202 and 25-7-204, MCA.

Upon review of the supplemental transcript of proceedings in Dvorak, which have become part of the record in this case, we find the following testimony of Charmaine Fisher, a Deputy Clerk of Court for the Thirteenth Judicial District:

> "Q. Have you sat on other cases where juries were selected in the same procedure? A. Yes.
>
> ". . .
>
> "Q. Was there a case called Solberg? A. Yes.
>
> ". . .
>
> "Q. And was the jury selected in that case in the same manner? A. Yes."

Also the testimony indicates that the procedure had been used in the district for many years.

> "Q. And is that [the jury selection procedure] commonly used in Yellowstone County? A. Yes, has been for, well I can't imagine how many years, I know at least twenty. . ."

Here, appellant's argument is simply: Dvorak and this case were tried in the same judicial district, both having juries selected with the same procedures and since Dvorak was reversed

- 3 -

because of such procedures, this case should also be reversed. We agree.

Respondent strenuously argues that appellant's objection is not timely. In Dvorak the appellant made his objection known a week after the verdict had been entered but before his motion for a new trial. In this case, appellant first objected to the jury selection process in his initial brief; more than one year since the trial. The respondent in Dvorak argued that objections to the jury selection process had come too late. We held otherwise, stating:

> "[t]he basic flaw in this contention is that counsel for the [appellant] did not discover the discrepancies in the jury selection process until a week after the trial. Further, counsel had no reason, prior to his inquiries, to suspect that the statutory procedures were not being followed. In other words, the 'means of knowledge' were not available for counsel to object before or during the trial.
>
> "In Ledger v. McKenzie (1938), 107 Mont. 335, 85 P.2d 352, this Court discussed the necessity of objecting to the impaneling of a jury in a timely manner. This Court held:
>
> "'. . . that if counsel does not have the knowledge, or means of knowledge, of the irregularity in the drawing of the jury or the panel from which it is selected until after the verdict, the question may be raised for the first time on motion for new trial.' 85 P.2d 353." Dvorak, ___ ___ Mont. at ___ ___, 639 P.2d at 64, 38 St.Rep. at 2179.

Respondent asserts that since the issue was not raised on motion for a new trial, any objection was lost. The rule cannot be so construed. The rule simply states that if counsel was without knowledge or means of knowledge during trial he may, upon gaining knowledge of selection irregularities, make his objection known in a motion for new trial. The rule does not limit the time period for making the objection, rather it defines a particular point as being timely. In this case we merely define another point as being timely.

Respondent also argues that appellant's counsel is a veteran trial attorney and must have been aware of the preselection process, thus counsel must have had knowledge or means of knowledge

of selection irregularities. Although appellant's counsel knew that the jury was preselected, it does not follow that he knew or should have known that the proper procedures were not followed. As we said in Dvorak, ___ Mont. at _ _ , 639 P.2d at 65, 38 St.Rep. at 2179, "counsel had a right to rely on the judge and clerk to follow their statutory duties."

Next, appellant contends error for failure of the District Court to give his offered jury instruction number 28, which reads:

> "You are instructed that this Court has found as a matter of law that Yellowstone County was negligent in its care and treatment of Darrel Solberg and therefore no finding on this question is required of you. The only remaining issue with respect to Yellowstone County is for you to find what damages, if any were proximately caused by Yellowstone County's negligence."

In support of the above instruction we are cited to Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460. In that case we upheld the District Court's ruling that the City of Billings was negligent as a matter of law in view of section 53-24-303(2), MCA. Appellant would have this Court declare the statute applicable in this case, however, we cannot do so. The statute reads:

> "A person who appears to be incapacitated by alcohol shall be taken into protective custody by the police and forthwith brought to an approved public treatment facility for emergency treatment. If no approved public treatment facility is readily available, he shall be taken to an emergency medical service customarily used for incapacitated persons. The police, in detaining the person and in taking him to an approved public treatment facility, are taking him into protective custody and shall make every reasonable effort to protect his health and safety. In taking the person into protective custody, the detaining officer may take reasonable steps to protect himself. No entry or other record may be made to indicate that the person taken into custody under this section has been arrested or charged with a crime."

Appellant's argument is simply this, the statute established a duty on Yellowstone County to take Solberg to a treatment facility or emergency medical service, and since this was not done

the defendant was negligent as a matter of law.

As we said in Azure, to uphold negligence per se through statute, "the plaintiff must be a member of the class in whose favor a duty was imposed by the statute . . . and the defendant must be a member of the class against whom a duty is imposed." Azure, 182 Mont. at 240-241, 596 P.2d at 464. We hold that the plaintiff was not a member of the protected class. We do not reach the question of whether Yellowstone County was a member of the class on whom the duty was imposed.

The underlying focus of section 53-24-303(2), MCA, is set forth in a legislative statement of policy:

> "It is the policy of the state of Montana to recognize alcoholism as an illness and that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society." Section 53-24-102, MCA.

In other words, the legislature had in mind the protection of those individuals whose only fault is an affinity for alcohol. Consequently, the police are obligated to further that purpose by placing in protective custody those who appear to be incapacitated by alcohol, and "[n]o entry or other record may be made to indicate that the person taken into custody . . . has been arrested or charged with a crime." Too often in the past, intoxicated or incapacitated persons were thrown in jail to sleep it off and invariably were charged with some criminal offense indicating the community's displeasure. This is what happened in Azure.

Solberg was not in the protected class. He was arrested for driving under the influence of alcohol and for driving without a valid license. He pled guilty to both of these offenses. The statute is not intended to protect incapacitated persons who have committed or are suspected of criminal acts; only those who by reason of their incapacitation, are in need of protective custody. Azure was in the protected class. After being

assaulted, police found him in a seemingly intoxicated condition. He showed obvious signs of injury; two black eyes, a large bruise on his forehead, and dried blood on his lips and teeth. He was in jail for sixteen hours before being taken to the hospital. He had committed no crime. Police had responded to what seemed to be an attempted burglary. He was charged with public intoxication and trespass. Clearly, Azure was among the protected class.

The foregoing does not preclude a common law duty. In Pretty on Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60-61, we stated:

> "A jailer owes a duty to the prisoner to keep him safe and to protect him from unnecessary harm. Reasonable and ordinary care must be exercised for the life and health of the prisoner. (Citations omitted.) 'A sheriff owes a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him.'"

We again cited the rule in Azure, that "law enforcement officials have a duty to obtain medical care when necessary for persons in their care or in their custody." Azure, 182 Mont. at 243, 596 P.2d at 465. Appellant claims that even under common law principles the defendant was negligent as a matter of law, thus, apart from the statute discussed above, the trial court should have given his proposed instruction. However, we hold that while there was a duty owed, it became a factual question for the jury whether or not that duty was breached:

> "Ordinarily it is for the jury to decide, under appropriate instructions, the issue of whether there has been a negligent breach of a legal duty. (Citations omitted.) Negligence and breach of duty are for the court to determine only if the evidence is undisputed or susceptible of but one conclusion by reasonable men." Suhr v. Sears Roebuck Co. (1969), 152 Mont. 344, 348, 450 P.2d 87, 89. See also Lawlor v. County of Flathead (1978), 177 Mont. 508, 582 P.2d 571.

We find that the issue of breach of duty was properly a jury issue. Reasonable men could reach different conclusions, thus negligence as a matter of law did not exist.

We now reach the third issue, whether or not there is

substantial evidence to support the verdict.

> "In considering the sufficiency of evidence we apply a limited standard of review. Where a fact issue is presented before a court sitting with a jury, and there is substantial evidence to support the jury verdict, the verdict will stand.
>
> ". . .
>
> "Evidence may be inherently weak and still be deemed substantial, and substantial evidence may conflict with other evidence." Gunnels v. Hoyt (1981), ___ ___ Mont. ___ , ___ ___, 633 P.2d 1187, 1191, 38 St.Rep. 1492, 1495.

Voluminous evidence was presented by both parties concerning Solberg's condition prior to his death. Medical experts differed on the precise nature of delirium tremens and whether or not Solberg may have crossed the fine line between alcoholic withdrawal, which is not life-threatening, and true delirium tremens, which is. There is no doubt that Solberg was completely disoriented at times, however, it was vigorously disputed as to what this symptom meant in terms of how a reasonable jailer would act. Appellant contended that Solberg's behavior was clearly indicative of DT's. However, respondent presented testimony idicating that the kind of symptoms that Solberg exhibited could occur while a person was going through alcohol withdrawal. In other words, these symptoms do not necessarily mean a person is in the life threatening condition of DT's.

Appellant relies heavily on his exhibit number two which is a training manual used in Yellowstone County to educate jailers concerning the problems of special prisoners. A pertinent part of that manual reads:

> "Probably the special prisoner seen most often by the jailer is the 'drunk.' And since these people are frequently put in jail, officers often tend to become casual in their treatment of them, assuming that they only need to 'sleep it off.' This may be true of some alcoholics, but there are many others who might become seriously ill or even die if merely left alone to 'sleep it off.'
>
> ". . .
>
> "While checking the intoxicated prisoners, you should ask yourself: ARE ANY OF THE PRISONERS TREMBLING AND SHOWING SIGNS OF EXPERIENCING STRANGE HALLUCINATIONS?

- 8 -

"If a prisoner trembles in fear thinking he is being attacked by such things as spiders, snakes, insects, etc., his condition--far from being silly or amusing--is extremely serious. He may be slipping into a condition commonly known as DT's (delirium tremens).

"If you recognize the above symptoms: CALL A PHYSICIAN IMMEDIATELY AND DESCRIBE THE PRISONER'S CONDITION TO HIM. THEN: FOLLOW HIS INSTRUCTIONS CAREFULLY."

Appellant argues that the jailers, all of whom were required to pass a course which used the manual, should have recognized the danger to Solberg, and since they did not, they did not act reasonably. However, there was evidence to establish that Solberg did not exhibit any symptoms of being fearful. A medical expert testified that the element of uncontrollable fear is a prerequisite to being in life-threatening DT's.

This case is factually difficult. With hindsight it is tempting to say that the jailers should have recognized the seriousness of Solberg's condition. However, in view of the evidence a jury could have logically concluded that the jailers acted reasonably and without negligence. "[O]nly when there is a complete absence of probative facts to support the verdict does error occur." Strong v. State (1979), _____ Mont. _____, _____, 600 P.2d 191, 194, 36 St.Rep. 1665, 1669.

For the foregoing reasons, we reverse and direct the court to grant a new trial.

_____
Justice

We concur:

_____

_____

_____
Justices

- 9 -

Mr. Justice Daniel J. Shea, concurring:

I join in the opinion and simply point out that in holding that a party can challenge the selection of a jury panel by raising the issue for the first time on appeal, we have impliedly overruled our holding in State v. Fitzpatrick (1977), 178 Mont. 530, 536, 569 P.2d 383, 387-388. Although we reversed defendant's conviction and the conviction of a co-defendant on other grounds and sent the case back for retrial, we held in Fitzpatrick that "defendants cannot challenge the jury for the first time on appeal on the ground that the District Court failed to select and draw panels in accordance with applicable Montana law." In reaching our decision here this Court should have addressed Fitzpatrick and the two other cases relied on in Fitzpatrick for the proposition which we are impliedly overruling today.

_____
Justice