MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent to the majority’s treatment of the jury selection issue. I would affirm.
The facts stated in the majority opinion need amplification. A certified supplemental record, consisting of an affidavit from the trial judge, sets forth the correct facts with respect to the jury selection *213 process. Because I deem them essential, I quote that affidavit verbatim:
“I, JOHN M. McCARVEL, Judge of the District Court of the Eighth Judicial District of the State of Montana, hereby certify that after the jury panel in the above-entitled matter was excused for cause on September 26, 1983,1 made certain statements concerning the procedure to be followed by the Clerk of Court when attempting to assemble the next jury panel for this cause. I stated that I did not want to have the same problem arise again and then instructed the Clerk that when she attempted to telephone the prospective jurors at the time of the next trial, she was to inquire of the prospective jurors as to their relationship, if any, with the Defendant Bank. At the time I so instructed the Clerk, I did so from the bench while attorneys for both parties, the Clerk of Court, and the Court Reporter were still present. When I gave that instruction to the Clerk, I did so in a voice loud enough to be heard by all those present in the Courtroom. At the time I gave that instruction to the Clerk, none of the attorneys present objected to the instruction to quiz the prospective jurors as to their relationship with the Defendant Bank nor did any attorney ever object to that instruction. At no time on September 26, 1983 or at any time thereafter did I ever tell any of the attorneys for either of the parties that I intended to rescind my instruction to the Clerk of Court.
“DATED this 15 day of May, 1984.
JOHN M. McCARVEL
District Court Judge”
It is true that the statutory change in Section 25-7-223(3)(b), MCA, made it clear that a depositor relationship with Bank did not mandatorily disqualify a juror from sitting in a case involving Bank. However, the district judge was still free to determine that those in such a close relationship with Bank would not be allowed to sit on the panel. The District Court here was acting properly in instructing the clerk to disqualify such people from the panel and, absent a showing of prejudice by Bank, the remaining panel would not be objectionable on the basis that depositors were excluded.
Even if we assume arguendo that there was some error that occurred when the clerk excused certain jurors, reversible error does not result, or at least did not under prior rulings of this Court.
In State v. Moran (1963), 142 Mont. 423, 384 P.2d 777, this Court held that the absence of certain members of the jury panel at the *214 time voir dire was conducted and the jury selected did not constitute reversible error. The Court noted that if there was error, the error had nothing to do with the original acquisition of the panel and therefore prejudice had to be shown. The Moran decision cited State v. Huffman (1931), 89 Mont. 194, 198, 296 P. 789, 790, for the proposition that:
“The right to challenge is the right to reject, not to select, a juror; no person can acquire a vested right to have any particular member of a panel sit upon his case unless and until such member has been accepted and sworn. Prejudice is not presumed from error . . . .” (Emphasis supplied.) 142 Mont. at 447, 384 P.2d at 790.
Likewise, in Ehni v. Northern Pacific Railway Co. (1969), 152 Mont. 373, 450 P.2d 882, we held that where a judge dismissed four jury members, after voir dire, because of their association with one of the parties, there was no prejudicial error absent a showing that the resultant jury was anything but fair and impartial.
In the case at bar the majority concedes that appellant has failed to show that the impaneled jury was defective. Therefore, in line with prior precedent, no reversible error should be found.
Common practice in Montana has been for the jurors to file in, talk with the trial judge and be excused. From time to time objections to this procedure have been lodged. The most recent case concerning this practice is State v. Stroud (Mont. 1984), [210 Mont. 58,] 683 P.2d 459, 41 St.Rep. 919. In that case the trial court, in the absence of counsel and prior to voir dire examination, excused two prospective jurors. Defendant claimed error on appeal. Justice Gulbrandson, writing for the majority said:
“In reaching this conclusion, we are not suggesting that the trial judge’s essentially educational examination should be adopted by other district judges. Nor are we suggesting that the judge’s method of examination was the best one. Certainly a record of any such proceedings should be maintained. Here, we conclude only that there is no credible evidence of prejudice to the defendant Stroud.” (Emphasis supplied.) Stroud, 683 P.2d at 464, 41 St.Rep. at 924.
In State v. Coleman (1978), 177 Mont. 1, 579 P.2d 732, 200 jurors were drawn according to statute. However, the District Court clerk was then allowed to inquire by telephone regarding which of those jurors would be available for trial. The District Court clerk excused 139 jurors and selected 61 who apparently answered they would be available. There was no statutory authority for the District Court clerk to so act. There is no record of why the clerk selected the 61 *215 jurors who eventually were called to the courthouse. While the majority opinion in Coleman is quite unclear in its treatment of this issue, the Court apparently found no error because Coleman was unable to show prejudice.
A case quite analogous to the case at bar is Kinty v. United Mine Workers of America (4th Cir. 1976), 544 F.2d 706. In that case the trial judge, approximately two and one-half weeks prior to trial, advised all parties he was instructing the clerk to inquire of the prospective jurors whether they had any “connection with the mining industry” and to remove from the jury list any who answered in the affirmative.
In commenting on that action, the fourth Circuit stated:
“Even were the objection not out of time, we are by no means convinced that the trial judge’s ruling could be assigned as error. Unquestionably the issues in these cases were matters on which all persons in the mining industry have strong and fixed opinions. It is extremely doubtful that under any circumstances such persons could be considered impartial and unbiased in considering and deciding the issues in these cases. Given the discretion available to the trial judge in determining the qualification of jurors, it would be difficult to find a clear abuse of discretion in the action of the trial judge.” (Footnote omitted.) Kinty, 544 F.2d at 723.
In State u. Reilly (1913), 25 N.D. 339, 141 N.W. 720, the North Dakota Supreme Court noted that a trial court has no right to arbitrarily discharge regular panel members without cause. Nevertheless, the North Dakota Court held such practice was not reversible error and said:
“[B]ut the cases which hold to this proposition fall far short of holding that error is committed where a court, for reasons of its own, has discharged a portion of a panel and either provided for the calling of talesmen or for an additional panel to fill the vacancies, especially where there is no proof or suggestion of partiality on the part of such court, or of any real prejudice to the defendant. The real thing to be guarded against is the denial of an impartial jury of one’s peers . . . .” Reilly, 141 N.W. at 723.
The law in Montana has been that we will only apply a per se rule requiring reversal without a showing of prejudice where there is error in selection of the array itself. Dvorak v. Huntley Project Irrigation District (1981), 196 Mont. 167, 639 P.2d 62. I questioned the wisdom of our decision in Dvorak and corrective legislative action was subsequently taken. Nevertheless, there arguably is some justifi *216 cation in applying sanctions for failure to follow statutory procedures in selection of the array itself. One can argue that the makeup of a jury panel can be skewed to eliminate certain elements from the panel and that a rule calling for per se reversal has a desirable prophylactic effect. However, if the panel selected is constitutionally sound, there seems to be no reason for reversal. Perhaps our decision in Dvorak was unsound.
The majority has here chosen to take a questionable decision, corrected legislatively, and for the first time expand the decision to embrace the elimination of prospective jurors from a panel selected properly. I can only conclude that the majority wished to reverse a jury verdict with which they disagreed. This result-oriented appellate decision-making continues to contribute to a chaotic legal process in which lawyers, litigants and trial judges find themselves playing Russian roulette.
I respectfully submit that the verdict for plaintiff, together with the judgment entered thereon, should be affirmed.